RICHARD D. SCOTT and JIMMIE LOU SCOTT, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Scott v. Commissioner
Docket No. 4074-71
United States Tax Court
T.C. Memo 1974-279; 1974 Tax Ct. Memo LEXIS 40; 33 T.C.M. (CCH) 1299; T.C.M. (RIA) 740279; October 29, 1974, Filed. *40 On their 1967 and 1968 federal tax returns petitioners deducted several items as business related expenses. Respondent disallowed them due to petitioners' failure to substantiate the amounts and show that they were incurred in connection with petitioners' trade or business. (1) Petitioners claim a mileage expense deduction for travel incurred in connection with Scott's insurance and school teaching activities. Held: Portions of the travel mileage have been adequately substantiated and will be allowed in full. An allocation on the basis of Cohan v. Commissioner, 39 F.2d 540 (2nd Cir. 1930) will be made with respect to the remaining mileage. (2) Petitioners claim bad debt losses arising from Scott's insurance business in 1967. Held: Petitioners have not established either the existence of a debtor-creditor relationship or the amount of the lossess. (3) Petitioners claim a school expense deduction in 1967 based on mileage and meal expenses. Held: The mileage expense will be allowed, but since petitioners were not required to stop and rest while traveling, the meal expenses will be denied. United States v. Correll, 389 U.S. 299 (1967). Petitioners also claim that amounts reported *41 in gross income in their 1967 and 1968 tax returns were estimated figures and that such amounts were never actually received. Held further: Petitioners have not adequately established this claim. Richard D. Scott, pro se. Kemble White, for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Judge: The respondent determined deficiencies in petitioners' federal income tax for the taxable years 1967 and 1968 in the amounts of $1,462.82 and $1,307.51, respectively. These deficiencies resulted from respondent's disallowance of certain personal and business related deductions claimed by the petitioners by reason of petitioners' failure to substantiate adequately the amounts and to establish that they constituted ordinary and necessary business expenses within the meaning of section 162, Internal Revenue Code of 1954. [1]
Many of these issues were settled at the trial but three issues remain for our determination. The first issue involves the amount of automobile mileage traveled by petitioner, Richard D. Scott, in connection with his insurance business and school teaching activities *42 during 1967 and 1968. The second issue concerns bad debt losses petitioner, Richard D. Scott, claims to have incurred in connection with his insurance business activities during 1967. The third issue involves automobile mileage and meal expenses incurred by petitioners in attending the Texas Speech Workshop in Fairfield and Baylor, Texas during the summer of 1967. Petitioners also claim that $1,941 and $1,332 reported on their 1967 and 1968 income tax returns, respectively, as additional insurance business "Income Not Shown in W-2 Form" was never in fact actually received. Consequently they wish to have these amounts excluded from income. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference.
Petitioners, Richard D. Scott (hereinafter Scott) and Jimmie Lou Scott, are husband and wife residing in Corsicana, Texas, at the time of their filing a petition herein. Petitioners filed joint income tax returns for the years 1967 and 1968. During the years in question petitioners were school teachers. Scott taught in Mabank, Texas, although the family residence *43 was in neighboring Corsicana, Texas. Scott also conducted an insurance business in which he placed various types of insurance policies for his clients. However, in this period Scott was terminating the insurance business due to low net income. As a result of Scott's dual activities, he traveled extensively in the surrounding area of Mabank and Corsicana, Texas. As a teacher he traveled to other schools for textbooks, to check absenteeism, attend meetings and other related duties. As an insurance agent he visited his clients, or returned to his residence to perform administrative details. Scott recorded his trips in 1967 and 1968 in diaries. Entries were made in these diaries either on the day or within a week of the trip. For 1967 these entries fall into several categories. They include trips from Mabank to Corsicana with and without an accompanying explanation, from Corsicana to a neighboring location with and without an accompanying explanation, from Mabank to a neighboring location and then to Corsicana with and without an accompanying explanation, and to a neighboring location with and without an accompanying explanation. The explanations for the insurance business related *44 trips consist of an individual's name with either the name of an insurance company or a type of insurance coverage on the bottom of the page on which the trip is entered. The explanations for the school teaching related trips consist of either the word "school" or some specific purpose being written on the page on which the trip is entered. The 1967 diary also contains entries for petitioners' trips to Fairfield and Baylor, Texas to attend the Texas Speech Workshop on which petitioners base their education expense deduction. These trips occurred periodically during the last half of 1967. Generally, both petitioners would make the trip, but on occasion Jimmie Lou Scott went alone. These entries also included a notation for meal expenses with the amount spent. The entries made in the 1968 diary fall into the categories as those made in the 1967 diary. However, none of the trips has an accompanying insurance business related explanation and school teaching related mileage is summarized at the end of each week. The diary also contains explanations for school teaching related trips as noted above. Petitioners made summaries of the entries in the 1967 and 1968 diaries. These summaries *45 were made at the request of the Internal Revenue Service and were prepared during the summer of 1973, approximately 2 months before trial. On these summaries petitioners characterize each trip as being in connection with either their insurance business or school teaching activities, but no additional description is provided. In his deficiency notice respondent disallowed the deductions still in controversy as follows: (a) It is determined that business expenses claimed of $1,530.00 of $1,031.00 for 1967 and 1968, respectively, [of which the mileage expense is a part] are not allowable because it has not been established that the amounts claimed constitute ordinary and necessary business expenses or were expended for the purpose designated. * * * (b) It is determined that bad debts claimed of $3,000.00 * * * for 1967 * * * are unallowable because it has not been established that any bad debts existed or if existing were not adequately substantiated as to amount. * * * * * * (i) It is determined that education expense claimed of $750.00 for 1967 is unallowable because it has not been verified as to amount and purpose. * * * The gross income exclusion issue was raised by the petitioners *46 after respondent's deficiency notice was issued. OPINION The case at bar presents for our determination several issues of whether certain expenses incurred by the petitioners are properly deductible within the terms o? sections 62 and 162, [2] *47 and whether certain expenditures are properly deductible as bad debts within the terms of section 166. [3] *48 Petitioners also claim that amounts previously included in gross income should have been excluded because they were never actually recieved. Before entering into the substantive discussion of the issues, we would like to point out that although petitioners were not represented by counsel their interests were protected by this Court. Scott, who presented petitoners' case, participated in several pre-trial discussions with three different judges of this Court. The nature of the issues as well as the manner of proof needed to sustain petitioners' claims were explained to him.At these discussions unsuccessful efforts were made to effect a mutually agreeable settlement. Before the trial was concluded, the nature and purpose of the petitioners' brief was also explained to Scott. Issue 1 - Automobile Mileage *49 Expenses During the years in question Scott taught school in Mabank, Texas and conducted an insurance business, which he was in the process of dissolving, at his residence in Corsicana, Texas. Because of this dual activity, Scott made numerous trips in the area of Mabank and Corsicana. Scott kept a record of these trips by making entries in diaries during 1967 and 1968. Petitioners, in their 1967 income tax return, claimed a $1,000 deduction from gross income based on a total mileage figure of 10,000 miles at 10 cents per mile. Petitioners now claim that the total figure should be 26,359 miles, with 20,052 miles and 6,307 miles being related to Scott's insurance business and school teaching activities, respectively. Although this enlarged mileage figure was not claimed in petitioners' pleadings, respondent does not now object to our consideration of this figure because petitioners had introduced this figure at earlier conferences. To sustain a deduction under section 62(2) (C), petitioners must show that this expense would be allowed under section 162. Under this section and the accompanying regulations only reasonable and necessary traveling expenses directly attributable to *50 the taxpayer's business may be deducted. Income Tax Regs. 1.162-2. Consequently the burden of proof is on the petitioners to show that the mileage claimed has a direct relationship to Scott's insurance business and school teaching activities. After examining the entries in the 1967 diary, we find the 20,052 insurance mileage figure to be numerically accurate. However, only a portion of that figure has been adequately explained as being directly related to Scott's insurance business. This is the mileage for those trips which Scott made from his first post of employment (Mabank) to a neighboring location on insurance business. As such this mileage is fully deductible. Steinhort v. Commissioner, 335 F.2d 496 (5th Cir. 1964) affirming a Memorandum Decision of this Court. The remaining portions of this figure fall into two categories for which only partial deductions can be allowed. The first category is commuting mileage which is clearly not deductible. Income Tax Regs. 1.162-2(e), Commissioner v. Flowers, 326 U.S. 465 (1946). This category includes those trips Scott made from Mabank to his residence in Corsicana where he worked on his insurance business. Julio S. Mazzotta, 57 T.C. 427 (1971), *51 affd. per curiam 465 F.2d 1399 (2nd Cir. 1972). However, Scott did testify that on occasion he visited clients in the Corsicana area before returning to his residence. As such this mileage would be deductible in full. Steinhort, supra.Since there is no exact indication of the frequency of these trips as opposed to trips directly to his residence, we will apply the rationale as expressed in Cohan v. Commissioner, 39 F.2d 540 (2nd Cir. 1930) and make an appropriate allocation. The second category includes that mileage which is unexplained in the diary. As such petitioners have failed to substantiate the business relationship to the extent formally required by section 162. However, Scott's testimony and the prepared summaries do establish a tenuous business relationship and here too, we will apply the Cohan rationale and make an appropriate allocation. Our inspection of the 1967 diary also revealed the 6,307 school mileage figure to be numerically accurate. Here too, only that portion that has been adequately explained as being directly related to Scott's school teaching activities will be fully deductible. The remaining unexplained mileage will be apportioned in the same manner *52 as the unexplained insurance mileage. Based on the above discussion the business related mileage within the terms of sections 62 and 162 is determined as follows: Insurance Mileage
Substantiated Mileage
983
Mabank to Corsicana Mileage with substantiation
596
Allocation at 40%
238
[4] Remaining Mileage
18,473
Allocation at 30%
5,542
Total Insurance Mileage Allowed
6,763
School Mileage
Substantiated Mileage
2,645
Remaining Mileage
3,662
Allocation at 40%
1,465
Total School Mileage Allowed
4,110
Petitioners, in their 1968 income tax return, claimed a $600 deduction from gross income based on a total mileage figure of 6,000 miles at 10 cents per mile. Petitioners now claim a total mileage figure of 16,753 miles, with 7,604 miles and 9,149 miles being related to Scott's insurance business and school teaching activities, respectively. [5] Respondent does *53 not now object to our consideration of this enlarged figure for the same reason as noted previously.
The entries in the 1968 diary and the prepared summaries thereof are similar to those made and examined for 1967. Two differences are to be noted. None of the entries bear an accompanying insurance business related explanation, and much of the school mileage is summarized weekly in lieu of individual entries. Based on our inspection of the 1968 diary and the summaries and the discussion with respect to the 1967 mileage deduction, which need not be repeated, the business related mileage within the terms of sections 62 and 162 is determined as follows: Insurance Mileage (all unsubstantiated)
7,604
Allocation at 20%
1,521
Total Insurance Mileage Allowed
1,521
School Mileage Substantiated Mileage
6,775
Remaining Mileage
2,374
Allocation at 40%
950
Total School Mileage Allowed
7,725
As noted earlier, Scott was dissolving his insurance business during this time. Consequently it seems reasonable that *54 his insurance business activity would be reduced in 1968. This accounts for the reduced allocation percentage of the 1968 unsubstantiated insurance mileage. Issue 2 - Bad Debt Losses Petitioners, in their 1967 income tax return claimed a $3,000 miscellaneous itemized deduction for bad debts not collected in connection with Scott's insurance business. At trial, Scott claimed that he paid money on behalf of his clients and that he was not subsequently reimbursed. Although this claim represents the accounts of 9 separate individuals, Scott could produce support for only one individual, Tommy Twomey, and in their brief, petitioners have conceded the remainder of this deduction. This support consisted of a completely unorganized file of papers. Included in the file are several cards on which are related a shorthand history of Twomey's account. From these cards it appears that Scott did make payments on Twomey's behalf for initial premiums, taxes, and fees. However, the cards also show payments from Twomey to Scott to cover these costs. After receiving the initial payments, the insurance company sent notes to Scott to be signed by Twomey, but Scott was not liable for these notes. *55 After reviewing the entire file, we find no documentary evidence to show how Twomey may have become indebted to Scott, or even if he became indebted, when the debt may have become worthless. See section 166, sections 1.166-1(a), 1.166-1(c), Income Tax Regs. We must agree with respondent's disallowance of this deduction. Issue 3 - Education Expenses Petitioners, in their 1967 income tax return, claimed a $750 deduction from gross income for mileage and meal expenses incurred in attending the Texas Speech Workshop in Fairfield and Baylor, Texas during the last half of 1967. To arrive at the $750 deduction, petitioners claimed 3,950 miles at 15 cents per mile and $160 of meal expenses. [6] Respondent does not object to the total mileage figure, but he does contest the use of 15 cents per mile and the meal expenses.
During 1967 622 were in effect. Under these guidelines deductions computed at a standard mileage rate would be accepted in lieu of all operating and fixed costs associated with the trade or business related operation of a passenger *56 automobile. The standard mileage rate established was 10 cents per mile for the first 15,000 business miles and 7 cents per mile thereafter. [7] Since we have previously allowed petitioners a total of 10,873 business miles with respect to the first issue discussed, the 3,950 business miles allowed here fit within the 15,000 mile ceiling. Consequently the business mileage deduction should be computed using the 10 cents per mile standard mileage rate. To sustain a deduction for meal expenses under sections 62(2) (B) and 162(a) (2), respondent has consistently required that a taxpayer traveling on business may deduct the cost of his meals only if his trip requires him to stop for sleep and rest. This rule has been used to draw a fixed line between deductible business expenses under section 162(a) (2) and personal, living, or family expenses which are expressly made nondeductible under section 262.
This rule has been the subject of much controversy, but its validity was upheld by the Supreme Court in United States v. Correll, 389 U.S. 299 (1967). *57 Petitioners did not present any testimonial or documentary evidence indicating that stops for sleep or rest were made. The entries in the 1967 diary, in which these trips are recorded, do not indicate anything other than the meal expenses incurred.Furthermore petitioners' mileage figure includes round trips made on consecutive days. Consequently the meal expense portion of this school expense deduction must be denied. Issue 4 - Gross Income to be Excluded Petitioners reported $1,941 and $1,332 additional insurance business "Income Not Shown on W-2 Form" on their 1967 and 1968 income tax returns respectively, and now wish to have these amounts excluded because they were never actually received. Although petitioners did not raise this issue in their pleadings, respondent does not object to our consideration of this issue since it was raised at earlier conferences. At trial Scott testified that these amounts were estimated in an attempt to avoid trouble with the Internal Revenue Service. It was his understanding that the insurance companies kept this money and that they should have reported it as income. Petitioners have presented no other evidence of any kind to support this claim. *58 In their brief, with respect to this issue, Scott made the following statement: "the insurance agencies counted this in their income and applied same on my debts to them." If this is what actually happened, petitioners certainly did receive the benefit of this income and it should be includable in their gross income within the terms of section 61. Nevertheless, without any tangible evidence to support his own statements at trial, we must deny this claim. Before concluding one final point should be discussed. In the letter by which petitioners filed their brief, they claim that insurance business losses which occurred prior to 1967 and 1968 have not been reflected in computing their taxable income for those years. This issue was not presented at trial and it was not discussed in earlier conferences. Petitioners have presented no tangible evidence to support this claim.Consequently this claim must be denied. Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 as amended. ↩
2. SEC. 62. ADJUSTED GROSS INCOME DEFINED. For purposes of this subtitle, the term "adjusted gross income" means, in the case of an individual, gross income minus the following deductions: (1) Trade and Business Deductions. - The deductions allowed by this chapter (other than by part VII of this subchapter) which are attributable to a trade or business carried on by the taxpayer, if such trade or business does not consist of the performance of services by the taxpayer as an employee. (2) Trade and Business Deductions of Employees. - * * * (B) Expenses for Travel Away from Home. - The deductions allowed by part VI (sec. 161 and following) which consist of expenses of travel, meals, and lodging while away from home, paid or incurred by the taxpayer in connection with the performance by him of services as an employee. (C) Transportation Expenses. - The deductions allowed by part VI (sec. 161 and following) which consist of expenses of transportation paid or incurred by the taxpayer in connection with the performance by him of services as an employee. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including - (1) a reasonable allowance for salaries or other compensation for personal services actually rendered; (2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business; and (3) rentals or other payments required to be made as purposes of the trade or business, or property to which the taxpayer has not taken or is not taking title or in which he has no equity. ↩
3. SEC. 166.BAD DEBTS. (a) General Rule. - (1) Wholly Worthless Debts. - There shall be allowed as a deduction any debt which becomes worthless within the taxable year. (2) Partially Worthless Debts. - When satisfied that a debt is recoverable only in part, the Secretary may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction. (b) Amount of Deduction. - For purposes of subsection ((a), the basis for determining the amount of the deduction for any bad debt shall be the adjusted basis provided in section 1011 for determing the loss ?rom the sale or other disposition of property ↩
4. The mileage figures for the above two groups reflect one-way mileage only. Since petitioners' insurance mileage figures reflect total miles traveled the remaining mileage has been increased substantially. This helps to account for the low allocation percentage, since it has been increased by mileage that would fall into the nondeductible commuting mileage group. ↩
5. Petitioners' summaries show 7,504 and 9,079 miles for insurance business and school teaching activities, respectively. The review of these entries revealed minor addition errors made by the petitioners. ↩
6. Based on petitioners' figures the actual deduction should be $752.50, but petitioners apparently adjusted the figures slightly downward. ↩
7. This standard was in effect until December 31, 1969 when Rev. Proc. 66-10, 1966-1 C.B. 622 was superseded by Rev. Proc. 70-25, 1970-2 C.B. 506↩.