## UNITED STATES *v.* CORRELL ET UX.

No. 113.   Argued November 14, 1967.—Decided December 11, 1967.

*Solicitor General Griswold* argued the cause for the United States.  On the briefs were former *Solicitor General Marshall, Assistant Attorney General Rogovin, Harris Weinstein, Gilbert E. Andrews* and *Edward Lee Rogers.*

*William L. Taylor, Jr.,* argued the cause for respondents.  On the brief was *Carl A. Swafford.*

Briefs of *amici curiae,* urging affirmance, were filed by *Leonard L. Silverstein* and *Sherwyn E. Syna* for the Bureau of Salesmen's National Associations, and by *Raphael Sherfy* for the Manufacturing Chemists' Association, Inc.

MR. JUSTICE STEWART delivered the opinion of the Court.

The Commissioner of Internal Revenue has long maintained that a taxpayer traveling on business may deduct the cost of his meals only if his trip requires him to stop for sleep or rest.  The question presented here is the validity of that rule.

The respondent in this case was a traveling salesman for a wholesale grocery company in Tennessee.[1] He customarily left home early in the morning, ate breakfast and lunch on the road, and returned home in time for dinner. In his income tax returns for 1960 and 1961, he deducted the cost of his morning and noon meals as "traveling expenses" incurred in the pursuit of his business "while away from home" under § 162 (a)(2) of the Internal Revenue Code of 1954.[2] Because the respondent's daily trips required neither sleep nor rest, the Commissioner disallowed the deductions, ruling that the cost of the respondent's meals was a "personal, living" expense under § 262[3] rather than a travel expense under § 162 (a)(2). The respondent paid the tax, sued for a refund in the District Court, and there received a favorable jury verdict.[4] The Court of Appeals for the Sixth

---

[1] Since Mr. and Mrs. Correll filed a joint income tax return, both are respondents here. Throughout this opinion, however, the term "respondent" refers only to Mr. Correll.

[2] "(a) *In General.*—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

.          .          .          .          .

"(2) traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business . . . ." § 162 (a)(2) of the Internal Revenue Code of 1954, 26 U. S. C. § 162 (a)(2) (1958 ed.).

[3] "Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses." § 262 of the Internal Revenue Code of 1954, 26 U. S. C. § 262.

[4] After denying the Government's motion for a directed verdict, the District Judge charged the jury that it would have to "determine under all the facts of this case whether or not" the Commissioner's rule was "an arbitrary regulation as applied to these plaintiffs under the facts in this case." He told the jury to consider whether the meal expenses were "necessary for the employee to properly perform the duties of his work." "Should he have eaten them at his home rather than . . . away from home in order to

Circuit affirmed, holding that the Commissioner's sleep or rest rule is not "a valid regulation under the present statute." 369 F. 2d 87, 90. In order to resolve a conflict among the circuits on this recurring question of federal income tax administration,[5] we granted certiorari. 388 U. S. 905.

Under § 162 (a)(2), taxpayers "traveling . . . away from home in the pursuit of a trade or business" may deduct the total amount "expended for meals and lodging."[6] As a result, even the taxpayer who incurs sub-

properly carry on his business or to perform adequately his duties as an employee of this produce company[?]" "You are instructed that the cost of meals while on one-day business trips away from home need not be incurred while on an overnight trip to be deductible, so long as the expense of such meals . . . proximately results from the carrying on the particular business involved and has some reasonable relation to that business." Under these instructions, the jury found for the respondent. The District Court denied the Government's motion for judgment notwithstanding the verdict.

[5] The decision below conflicts with that of the First Circuit in *Commissioner* v. *Bagley,* 374 F. 2d 204, but is in accord with that of the Eighth Circuit in *Hanson* v. *Commissioner,* 298 F. 2d 391, reaffirmed in *United States* v. *Morelan,* 356 F. 2d 199, 208–210.

[6] Prior to the enactment in 1921 of what is now § 162 (a)(2), the Commissioner had promulgated a regulation allowing a deduction for the cost of meals and lodging away from home, but only to the extent that this cost exceeded "any expenditures ordinarily required for such purposes when at home." Treas. Reg. 45 (1920 ed.), Art. 292, 4 Cum. Bull. 209 (1921). Despite its logical appeal, the regulation proved so difficult to administer that the Treasury Department asked Congress to grant a deduction for the "entire amount" of such meal and lodging expenditures. See Statement of Dr. T. S. Adams, Tax Adviser, Treasury Department, in Hearings on H. R. 8245 before the Senate Committee on Finance, 67th Cong., 1st Sess., at 50, 234–235 (1921). Accordingly, § 214 (a)(1) of the Revenue Act of 1921, c. 136, 42 Stat. 239, for the first time included the language that later became § 162 (a)(2). See n. 2, *supra.* The section was amended in a respect not here relevant by the Revenue Act of 1962, § 4 (b), 76 Stat. 976.

stantial hotel and restaurant expenses because of the special demands of business travel receives something of a windfall, for at least part of what he spends on meals represents a personal living expense that other taxpayers must bear without receiving any deduction at all.[7] Not surprisingly, therefore, Congress did not extend the special benefits of § 162 (a)(2) to every conceivable situation involving business travel. It made the total cost of meals and lodging deductible only if incurred in the course of travel that takes the taxpayer "away from home." The problem before us involves the meaning of that limiting phrase.

In resolving that problem, the Commissioner has avoided the wasteful litigation and continuing uncertainty that would inevitably accompany any purely case-by-case approach to the question of whether a particular taxpayer was "away from home" on a particular day.[8] Rather than requiring "every meal-purchasing taxpayer to take pot luck in the courts,"[9] the Commissioner has consistently construed travel "away from home" to exclude all trips requiring neither sleep nor rest,[10] regard-

[7] Because § 262 makes "personal, living, or family expenses" nondeductible, see n. 3, *supra,* the taxpayer whose business requires no travel cannot ordinarily deduct the cost of the lunch he eats away from home. But the taxpayer who can bring himself within the reach of § 162 (a)(2) may deduct what he spends on his noon-time meal although it costs him no more, and relates no more closely to his business, than does the lunch consumed by his less mobile counterpart.

[8] Such was the approach of the Tax Court in *Bagley* v. *Commissioner,* 46 T. C. 176, 183, vacated, 374 F. 2d 204; of the Eighth Circuit in *Hanson* v. *Commissioner,* 298 F. 2d 391, 397; and evidently of the Sixth Circuit in this case, see 369 F. 2d 87, 90.

[9] *Commissioner* v. *Bagley,* 374 F. 2d 204, 207.

[10] The Commissioner's interpretation, first expressed in a 1940 ruling, I. T. 3395, 1940–2 Cum. Bull. 64, was originally known as the overnight rule. See *Commissioner* v. *Bagley, supra,* at 205.

less of how many cities a given trip may have touched,[11] how many miles it may have covered,[12] or how many hours it may have consumed.[13] By so interpreting the statutory phrase, the Commissioner has achieved not only ease and certainty of application but also substantial fairness, for the sleep or rest rule places all one-day travelers on a similar tax footing, rather than discriminating against intracity travelers and commuters, who of course cannot deduct the cost of the meals they eat on the road. See *Commissioner* v. *Flowers,* 326 U. S. 465.

Any rule in this area must make some rather arbitrary distinctions,[14] but at least the sleep or rest rule avoids the obvious inequity of permitting the New Yorker who makes a quick trip to Washington and back, missing neither his breakfast nor his dinner at home, to deduct the cost of his lunch merely because he covers more miles

---

[11] The respondent lived in Fountain City, Tennessee, some 45 miles from his employer's place of business in Morristown. His territory included restaurants in the cities of Madisonville, Engelwood, Etowah, Athens, Sweetwater, Lake City, Caryville, Jacksboro, La Follette, and Jellico, all in eastern Tennessee.

[12] The respondent seldom traveled farther than 55 miles from his home, but he ordinarily drove a total of 150 to 175 miles daily.

[13] The respondent's employer required him to be in his sales territory at the start of the business day. To do so, he had to leave Fountain City at about 5 a. m. He usually finished his daily schedule by 4 p. m., transmitted his orders to Morristown, and returned home by 5:30 p. m.

[14] The rules proposed by the respondent and by the two *amici curiae* filing briefs on his behalf are not exceptional in this regard. Thus, for example, the respondent suggests that § 162 (a) (2) be construed to cover those taxpayers who travel outside their "own home town," or outside "the greater . . . metropolitan area" where they reside. One *amicus* stresses the number of "hours spent and miles traveled away from the taxpayer's principal post of duty," suggesting that some emphasis should also be placed upon the number of meals consumed by the taxpayer "outside the general area of his home."

than the salesman who travels locally and must finance all his meals without the help of the Federal Treasury.[15] And the Commissioner's rule surely makes more sense than one which would allow the respondent in this case to deduct the cost of his breakfast and lunch simply because he spends a greater percentage of his time at the wheel than the commuter who eats breakfast on his way to work and lunch a block from his office.

The Court of Appeals nonetheless found in the "plain language of the statute" an insuperable obstacle to the Commissioner's construction. 369 F. 2d 87, 89. We disagree. The language of the statute—"meals and lodging . . . away from home"—is obviously not self-defining.[16] And to the extent that the words chosen by Congress cut in either direction, they tend to support rather than defeat the Commissioner's position, for the statute speaks of "meals and lodging" as a unit, suggesting—at least arguably—that Congress contemplated a deduction for the cost of meals only where the travel in question involves lodging as well.[17] Ordinarily, at least, only the taxpayer who finds it necessary to stop for sleep or rest incurs significantly higher living expenses as a direct

---

[15] See *Amoroso* v. *Commissioner,* 193 F. 2d 583.

[16] The statute applies to the meal and lodging expenses of taxpayers "traveling . . . away from home." The very concept of "traveling" obviously requires a physical separation from one's house. To read the phrase "away from home" as broadly as a completely literal approach might permit would thus render the phrase completely redundant. But of course the words of the statute have never been so woodenly construed. The commuter, for example, has never been regarded as "away from home" within the meaning of § 162 (a) (2) simply because he has traveled from his residence to his place of business. See *Commissioner* v. *Flowers,* 326 U. S. 465, 473. More than a dictionary is thus required to understand the provision here involved, and no appeal to the "plain language" of the section can obviate the need for further statutory construction.

[17] See *Commissioner* v. *Bagley,* 374 F. 2d 204, 207, n. 10.

result of his business travel,[18] and Congress might well have thought that only taxpayers in that category should be permitted to deduct their living expenses while on the road.[19] In any event, Congress certainly recognized, when it promulgated § 162 (a)(2), that the Commissioner had so understood its statutory predecessor.[20] This case thus comes within the settled principle that "Treasury regulations and interpretations long continued without substantial change, applying to unamended or substantially reënacted statutes, are deemed to have

---

[18] The taxpayer must ordinarily "maintain a home for his family at his own expense even when he is absent on business," *Barnhill* v. *Commissioner*, 148 F. 2d 913, 917, and if he is required to stop for sleep or rest, "continuing costs incurred at a permanent place of abode are duplicated." *James* v. *United States*, 308 F. 2d 204, 206. The same taxpayer, however, is unlikely to incur substantially increased living expenses as a result of business travel, however far he may go, so long as he does not find it necessary to stop for lodging. One *amicus curiae* brief filed in this case asserts that "those who travel considerable distances such as [on] a one-day jet trip between New York and Chicago" spend more for "comparable meals [than] those who remain at their home base" and urges that all who travel "substantial distances" should therefore be permitted to deduct the entire cost of their meals. It may be that eating at a restaurant costs more than eating at home, but it cannot seriously be suggested that a taxpayer's bill at a restaurant mysteriously reflects the distance he has traveled to get there.

[19] The court below thought that "[i]n an era of supersonic travel, the time factor is hardly relevant to the question of whether or not . . . meal expenses are related to the taxpayer's business . . . ." 369 F. 2d 87, 89–90. But that completely misses the point. The benefits of § 162 (a)(2) are limited to business travel "away from home," and *all* meal expenses incurred in the course of such travel are deductible, however unrelated they may be to the taxpayer's income-producing activity. To ask that the definition of "away from home" be responsive to the business necessity of the taxpayer's meals is to demand the impossible.

[20] In considering the proposed 1954 Code, Congress heard a taxpayer plea for a change in the rule disallowing deductions for meal expenses on one-day trips. Hearings on General Revision of the Internal Revenue Code before the House Committee on Ways and

received congressional approval and have the effect of law." *Helvering* v. *Winmill*, 305 U. S. 79, 83; *Fribourg Nav. Co.* v. *Commissioner*, 383 U. S. 272, 283.

Alternatives to the Commissioner's sleep or rest rule are of course available.[21] Improvements might be imagined.[22] But we do not sit as a committee of revision to

Means, 83d Cong., 1st Sess., pt. 1, at 216–219 (1953); Hearings on H. R. 8300 before the Senate Committee on Finance, 83d Cong., 2d Sess., pt. 4, at 2396 (1954). No such change resulted.

In recommending § 62 (2) (C) of the 1954 Code, permitting employees to deduct certain transportation expenses in computing adjusted gross income, the Senate Finance Committee stated:

"At present, business transportation expenses can be deducted by an employee in arriving at adjusted gross income only if they are reimbursed by the employer or if they are incurred while he was *away from home overnight* . . . .

"Because these expenses, when incurred, usually are substantial, it appears desirable to treat employees in this respect like self-employed persons. For this reason both the House and your committee's bill permit employees to deduct business transportation expenses in arriving at adjusted gross income even though the expenses are not incurred in travel *away from home* or not reimbursed by the employer. . . ." S. Rep. No. 1622, 83d Cong., 2d Sess., 9 (1954) (emphasis added). See also H. R. Rep. No. 1337, 83d Cong., 2d Sess., 9 (1954).

And in discussing § 120 of the 1954 Code (repealed by 72 Stat. 1607 (1958)), which allowed policemen to exclude from taxable income up to $5 per day in meal allowances, both the House and Senate Reports noted that, under the prevailing rule, police officers could deduct expenses *over* the $5 limit of § 120 "for meals while *away from home overnight*." H. R. Rep. No. 1337, 83d Cong., 2d Sess., A40 (1954) (emphasis added); S. Rep. No. 1622, 83d Cong., 2d Sess., 191 (1954) (emphasis added). Thus Congress was well aware of the Commissioner's rule when it retained in § 162 (a) (2) the precise terminology it had used in 1921.

[21] See n. 14, *supra.*

[22] See; *e. g.*, the 1963 proposal of the Treasury Department, in Hearings on the President's 1963 Tax Message before the House Committee on Ways and Means, 88th Cong., 1st Sess., pt. 1, at 98 (1963).

perfect the administration of the tax laws. Congress has delegated to the Commissioner, not to the courts, the task of prescribing "all needful rules and regulations for the enforcement" of the Internal Revenue Code. 26 U. S. C. § 7805 (a). In this area of limitless factual variations, "it is the province of Congress and the Commissioner, not the courts, to make the appropriate adjustments." *Commissioner* v. *Stidger,* 386 U. S. 287, 296. The role of the judiciary in cases of this sort begins and ends with assuring that the Commissioner's regulations fall within his authority to implement the congressional mandate in some reasonable manner. Because the rule challenged here has not been shown deficient on that score, the Court of Appeals should have sustained its validity. The judgment is therefore

*Reversed.*

MR. JUSTICE MARSHALL took no part in the consideration or decision of this case.

MR. JUSTICE DOUGLAS, with whom MR. JUSTICE BLACK and MR. JUSTICE FORTAS concur, dissenting.

The statutory words "while away from home," 26 U. S. C. § 162 (a)(2), may not in my view be shrunken to "overnight" by administrative construction or regulations. "Overnight" injects a time element in testing deductibility, while the statute speaks only in terms of geography. As stated by the Court of Appeals:

"In an era of supersonic travel, the time factor is hardly relevant to the question of whether or not travel and meal expenses are related to the taxpayer's business and cannot be the basis of a valid regulation under the present statute." *Correll* v. *United States,* 369 F. 2d 87, 89–90.

I would affirm the judgment below.