Harold **SCHUDEL** and Paula J. Schudel, Paul N. Goodmonson and Margaret Goodmonson, Petitioners-Appellants,

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

Nos. 75–1183 and 75–1186.

United States Court of Appeals, Ninth Circuit.

Oct. 28, 1977.

William H. Kinsey, Souther, Spaulding, Kinsey, Williamson & Schwabe, Portland, Or., argued for petitioners-appellants.

Robert T. Duffy, Tax Div., U. S. Dept. of Justice, Washington, D. C., argued for respondent-appellee.

Before BROWNING and KILKENNY, Circuit Judges, and VAN PELT,* District Judge.

PER CURIAM:

Appellants, growers of Christmas trees, appeal from a Tax Court decision sustaining income tax deficiencies asserted by the Commissioner of Internal Revenue for calendar years 1967, 1968, and 1969. The dispute turns upon the interpretation of section 631(a) of the Internal Revenue Code of 1954 (26 U.S.C. § 631(a)).

Section 631(a) [1] allows timber owners who cut their own timber to treat the cutting as a "sale or exchange" and hence as a taxable event on which capital gain or loss may be computed pursuant to section 1231. The gain or loss from the hypothetical sale for tax purposes is the difference between the adjusted basis and "the fair market value as of the first day of the taxable year in which such timber is cut."

Appellants' tax year began January 1. Each year they cut the trees in November, for sale during the Christmas season. By the terms of the statute, gain or loss on the trees when cut is to be measured by their

---

* Honorable Robert Van Pelt, Senior United States District Judge, District of Nebraska, sitting by designation.

1. Section 631(a) provides:
   (a) Election to consider cutting as sale or exchange. If the taxpayer so elects on his return for a taxable year, the cutting of timber . . . shall be considered as a sale or exchange of such timber cut during such year. . . . [G]ain or loss to the taxpayer shall be recognized in an amount equal to the difference between the fair market value of such timber, and the adjusted basis for depletion of such timber in the hands of the taxpayer. Such fair market value shall be the fair market value as of the first day of the taxable year in which such timber is cut, and shall thereafter be considered as the cost of such cut timber to the taxpayer for all purposes for which such cost is a necessary factor. . . . For purposes of this subsection and subsection (b), the term "timber" includes evergreen trees which are more than 6 years old at the time severed from the roots and are sold for ornamental purposes.

fair market value on the preceding January 1, almost a year earlier. The trees grew during this period. When cut in November the trees were of premium grade. The Tax Court found that on the preceding January 1, the same trees would have been graded as No. 2 trees. The question is whether, for the purpose of calculating gain or loss when the trees were cut in November, the fair market value as of January 1 is to be determined on the basis of the condition of the trees on that date, as the Commissioner contends, or their condition when they were cut, as the taxpayers contend.

▪ The Tax Court held the condition of the trees on January 1 controlled. We cannot agree.

The language of section 631(a) is not clearly dispositive, but the more reasonable reading favors the taxpayers' position. The subject matter of the hypothetical sale is "such timber cut." The gain or loss is based on the fair market value "of such timber." The words "[s]uch fair market value shall be the fair market value as of the first day of the taxable year in which such timber is cut," refer to an earlier date for determining price in the hypothetical sale, but not for determining the quality and quantity of the timber cut and then hypothetically sold. It would be unreasonable to read into the language the unexpressed condition that the quality and quantity of the timber was also to be fixed at the first of the taxable year. Those factors could only be known when the cutting occurred. The Commissioner offers no answer to the argument that if the words were given the meaning he suggests, the fair market value of the timber as it stood at the beginning of the taxable year would control even though fire, pest, or disease had reduced its quality by the time the cutting and hypothetical sale occurred.

▪ The applicable treasury regulation, on the other hand, supports the Commissioner.[2] The Commissioner argues that since the regulation is one of long standing it should be given the effect of law, citing *United States v. Correll*, 389 U.S. 299, 305–06, 88 S.Ct. 445, 19 L.Ed.2d 537 (1967). But the Court in *Correll* also said, "The rule of the judiciary in cases of this sort begins and ends with assuring that the Commissioner's regulations fall within his authority to implement the congressional mandate in some reasonable manner." *Id.* at 307, 88 S.Ct. at 450. Here the regulation defeats the congressional purpose.

Congress intended to separate the gain due to natural growth of the timber, which is treated as capital gain, from any additional increase due to manufacturing or marketing, which is treated as ordinary income. J. Chommie, Federal Income Taxation 409 (2d ed. 1973). If the market price is fixed on the basis of the condition of the trees at the beginning of the tax year in which the trees are cut, the taxpayer is denied capital gain treatment for gain due to natural growth from the beginning of the taxpayer's tax year to the date of cutting.

Congress intended to provide the same capital gain treatment to growers who cut their own timber as is accorded those who sell their timber outright. S.Rep.No. 627, 78th Cong., 1st Sess. 25 (1943), *reprinted in* 1944 C.B. 973, 993; 90 Cong.Rec. 1965 (1944) (remarks by Senator Barkley). Congress thought such parity to be required by fairness and as a stimulant to conservation and reforestation. 90 Cong.Rec. 1949–50 (1944) (remarks of Senator George); Briggs & Condrell, Tax Treatment of Timber, 5 Tim-

---

2. Treasury Regulation § 1.631–(d)(2) provides:
   (2) The fair market value of the timber as of the first day of the taxable year in which such timber is cut shall be determined . . by the taxpayer in the light of the most reliable and accurate information available *with reference to the condition of the property as it existed at that date*, regardless of all subsequent changes, such as changes in surrounding circumstances, methods of exploita-

tion, degree of utilization, etc. The value sought will be the selling price, assuming a transfer between a willing seller and a willing buyer as of that particular day. Due consideration will be given to the factors and the principles involved in the determination of the fair market value of timber as described *in the regulations under section 611.*
(Emphasis added.)

ber Tax Journal No. 1, 7–8 (1969). The Commissioner's approach does not achieve the intended parity. The fair market value used for capital gain or loss calculations by growers who sell their trees outright reflects all growth to the time of sale, but the Commissioner's method does not allow appellants who cut their own trees to include growth occurring between the beginning of the tax year and the time of cutting.[3]

Congress' sole purpose in stipulating the beginning of the tax year as the single valuation date was to simplify the preparation and processing of tax forms. *See* Revenue Revision of 1943: House Hearings Before the Comm. on Ways and Means, 78th Cong., 1st Sess. 815–16 (statement of Lowell H. Parker, representing Forest Industries Committee on Timber Valuation and Taxation). The Commissioner's approach gives this provision an unintended substantive impact.

Appellants' interpretation, on the other hand, serves all of Congress' purposes. Determining fair market value with regard to the condition of the trees when cut results in capital gain treatment for all increase in value due to growth and treats as ordinary income gain from subsequent processing and marketing. It accords equal treatment to growers who sell and growers who cut. It eliminates a disparity Congress considered conducive to wasteful cutting practices. It fully realizes Congress' purpose to minimize compliance and administrative burdens.

We conclude that section 1.631–1(d)(2) of the treasury regulations is inconsistent with the statute construed in light of congressional intent. The determination of fair market by the Commissioner and the Tax Court was tainted by application of the erroneous standard reflected in the regulation, and reversal is therefore required.

■ · Taxpayers urge us to determine the fair market value in accordance with the proper standard. We would do so if no more were involved than a recalculation from the record. However, disputes remain as to the proper manner of determining the fair market price as of January 1 of trees in the condition they were in when cut in November—whether, for example, the price should be calculated from the sales price of trees sold during the preceding November-December harvesting period, or from the price negotiated in January for trees to be sold and delivered during the next Christmas marketing season, and, once this is decided, what adjustments in the base price are appropriate, if any. The Tax Court did not consider these questions in light of the proper statutory standard. We remand so that it may do so.

Reversed and remanded for further proceedings.

KILKENNY, Circuit Judge, dissenting:

I respectfully dissent on the following grounds:

(1) The appellants did not question the validity of the regulation in the Tax Court, nor do they challenge its validity on this appeal. In all fairness to the trial judge, we should not write on an issue which was not urged before him, nor should we write on the validity of the regulation without proper briefing and argument.

(2) The regulation was promulgated by the Commissioner almost forty years ago. Since that time the Congress has reenacted 26 U.S.C. § 631(a) on at least three occasions, using precisely the same language on when the fair market value of the timber should be fixed, the latest reenactment being in 1976. 90 Stat. 1732, 1733. Needless to say, we must assume that the Congress was familiar with the interpretation placed on the statute by the Commissioner. None-

---

**3.** The Commissioner's treatment of Christmas trees appears to be inconsistent with the treatment given other types of timber under the same statute. The fair market value of timber other than Christmas trees is determined as of the first day of the taxable year as a fixed figure per board foot, but the quantity of tim-

ber valued at that price is the number of board feet actually cut, without reduction, apparently, for growth occurring between the first day of the taxable year and the date of cutting. *See* Revenue Revision of 1943: House Hearings Before the Comm. on Ways and Means, 78th Cong., 1st Sess. 806, Example (a).

theless, it did not see fit to change the pertinent language of the statute. *See Chemehuevi Tribe of Indians v. Federal Power Commission*, 420 U.S. 395, 408–10, 95 S.Ct. 1066, 35 L.Ed.2d 279 (1975). The spectre of horribles suggested by the majority that the timber might be destroyed by fire, pest, or disease between January 1st and November is simply not presented by the facts in this case. *See United States v. Ramsey*, 431 U.S. 606, 612–614, 97 S.Ct. 1972, 1976–1977, 52 L.Ed.2d 617, n. 8.

I would affirm the judgment of the Tax Court.