**John D. MOSS, Jr. and Diane C. Moss, Petitioners-Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

**No. 84–1820.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 17, 1985.

Decided March 27, 1985.

Rehearing and Rehearing En Banc Denied April 25, 1985.

Eugene L. Mahoney, Mahoney & Zdeb, Chicago, Ill., for petitioners-appellants.

Jonathan S. Cohen, Tax Div., Dept. of Justice, Washington, D.C., for respondent-appellee.

Before CUMMINGS, Chief Judge, and BAUER and POSNER, Circuit Judges.

POSNER, Circuit Judge.

The taxpayers, a lawyer named Moss and his wife, appeal from a decision of the Tax Court disallowing federal income tax deductions of a little more than $1,000 in each of two years, representing Moss's share of his law firm's lunch expense at the Cafe Angelo in Chicago. 80 T.C. 1073 (1983). The Tax Court's decision in this case has attracted some attention in tax circles because of its implications for the general problem of the deductibility of business meals. See, e.g., McNally, *Vulnerability of Entertainment and Meal Deductions*

*Under the Sutter Rule,* 62 Taxes 184 (1984).

Moss was a partner in a small trial firm specializing in defense work, mostly for one insurance company. Each of the firm's lawyers carried a tremendous litigation caseload, averaging more than 300 cases, and spent most of every working day in courts in Chicago and its suburbs. The members of the firm met for lunch daily at the Cafe Angelo near their office. At lunch the lawyers would discuss their cases with the head of the firm, whose approval was required for most settlements, and they would decide which lawyer would meet which court call that afternoon or the next morning. Lunchtime was chosen for the daily meeting because the courts were in recess then. The alternatives were to meet at 7:00 a.m. or 6:00 p.m., and these were less convenient times. There is no suggestion that the lawyers dawdled over lunch, or that the Cafe Angelo is luxurious.

The framework of statutes and regulations for deciding this case is simple, but not clear. Section 262 of the Internal Revenue Code (Title 26) disallows, "except as otherwise expressly provided in this chapter," the deduction of "personal, family, or living expenses." Section 119 excludes from income the value of meals provided by an employer to his employees for his convenience, but only if they are provided on the employer's premises; and section 162(a) allows the deduction of "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—... (2) traveling expenses (including amounts expended for meals ...) while away from home...." Since Moss was not an employee but a partner in a partnership not taxed as an entity, since the meals were not served on the employer's premises, and since he was not away from home (that is, on an overnight trip away from his place of work, see *United States v. Correll,* 389 U.S. 299, 88 S.Ct. 445, 19 L.Ed.2d 537 (1967)), neither section 119 nor section 162(a)(2) applies to this case. The Internal Revenue Service concedes, however, that meals are deductible under section 162(a)

when they are ordinary and necessary business expenses (provided the expense is substantiated with adequate records, see section 274(d)) even if they are not within the express permission of any other provision and even though the expense of commuting to and from work, a traveling expense but not one incurred away from home, is not deductible. Treasury Regulations on Income Tax § 1.262–1(b)(5); *Fausner v. Commissioner,* 413 U.S. 838, 93 S.Ct. 2820, 37 L.Ed.2d 996 (1973) (per curiam).

The problem is that many expenses are simultaneously business expenses in the sense that they conduce to the production of business income and personal expenses in the sense that they raise personal welfare. This is plain enough with regard to lunch; most people would eat lunch even if they didn't work. Commuting may seem a pure business expense, but is not; it reflects the choice of where to live, as well as where to work. Read literally, section 262 would make irrelevant whether a business expense is also a personal expense; so long as it is ordinary and necessary in the taxpayer's business, thus bringing section 162(a) into play, an expense is (the statute seems to say) deductible from his income tax. But the statute has not been read literally. There is a natural reluctance, most clearly manifested in the regulation disallowing deduction of the expense of commuting, to lighten the tax burden of people who have the good fortune to interweave work with consumption. To allow a deduction for commuting would confer a windfall on people who live in the suburbs and commute to work in the cities; to allow a deduction for all business-related meals would confer a windfall on people who can arrange their work schedules so they do some of their work at lunch.

■ Although an argument can thus be made for disallowing *any* deduction for business meals, on the theory that people have to eat whether they work or not, the result would be excessive taxation of people who spend more money on business meals because they are business meals

than they would spend on their meals if they were not working. Suppose a theatrical agent takes his clients out to lunch at the expensive restaurants that the clients demand. Of course he can deduct the expense of their meals, from which he derives no pleasure or sustenance, but can he also deduct the expense of his own? He can, because he cannot eat more cheaply; he cannot munch surreptitiously on a peanut butter and jelly sandwich brought from home while his client is wolfing down tournedos Rossini followed by soufflé au grand marnier. No doubt our theatrical agent, unless concerned for his longevity, derives personal utility from his fancy meal, but probably less than the price of the meal. He would not pay for it if it were not for the business benefit; he would get more value from using the same money to buy something else; hence the meal confers on him less utility than the cash equivalent would. The law could require him to pay tax on the fair value of the meal to him; this would be (were it not for costs of administration) the economically correct solution. But the government does not attempt this difficult measurement; it once did, but gave up the attempt as not worth the cost, see *United States v. Correll, supra,* 389 U.S. at 301 n. 6, 88 S.Ct. at 446 n. 6. The taxpayer is permitted to deduct the whole price, provided the expense is "different from or in excess of that which would have been made for the taxpayer's personal purposes." *Sutter v. Commissioner,* 21 T.C. 170, 173 (1953).

Because the law allows this generous deduction, which tempts people to have more (and costlier) business meals than are necessary, the Internal Revenue Service has every right to insist that the meal be shown to be a real business necessity. This condition is most easily satisfied when a client or customer or supplier or other outsider to the business is a guest. Even if Sydney Smith was wrong that "soup and fish explain half the emotions of life," it is undeniable that eating together fosters camaraderie and makes business dealings friendlier and easier. It thus reduces the costs of transacting business, for these costs include the frictions and the failures of communication that are produced by suspicion and mutual misunderstanding, by differences in tastes and manners, and by lack of rapport. A meeting with a client or customer in an office is therefore not a perfect substitute for a lunch with him in a restaurant. But it is different when all the participants in the meal are coworkers, as essentially was the case here (clients occasionally were invited to the firm's daily luncheon, but Moss has made no attempt to identify the occasions). They know each other well already; they don't need the social lubrication that a meal with an outsider provides—at least don't need it daily. If a large firm had a monthly lunch to allow partners to get to know associates, the expense of the meal might well be necessary, and would be allowed by the Internal Revenue Service. See *Wells v. Commissioner,* 36 T.C.M. 1698, 1699 (1977), aff'd without opinion, 626 F.2d 868 (9th Cir.1980). But Moss's firm never had more than eight lawyers (partners and associates), and did not need a daily lunch to cement relationships among them.

It is all a matter of degree and circumstance (the expense of a testimonial dinner, for example, would be deductible on a morale-building rationale); and particularly of frequency. Daily—for a full year—is too often, perhaps even for entertainment of clients, as implied by *Hankenson v. Commissioner,* 47 T.C.M. 1567, 1569 (1984), where the Tax Court held nondeductible the cost of lunches consumed three or four days a week, 52 weeks a year, by a doctor who entertained other doctors who he hoped would refer patients to him, and other medical personnel.

■ We may assume it was necessary for Moss's firm to meet daily to coordinate the work of the firm, and also, as the Tax Court found, that lunch was the most convenient time. But it does not follow that the expense of the lunch was a necessary business expense. The members of the firm had to eat somewhere, and the Cafe Angelo was both convenient and not too expensive. They do not claim to have in-

curred a greater daily lunch expense than they would have incurred if there had been no lunch meetings. Although it saved time to combine lunch with work, the meal itself was not an organic part of the meeting, as in the examples we gave earlier where the business objective, to be fully achieved, required sharing a meal.

The case might be different if the location of the courts required the firm's members to eat each day either in a disagreeable restaurant, so that they derived less value from the meal than it cost them to buy it, cf. *Sibla v. Commissioner*, 611 F.2d 1260, 1262 (9th Cir.1980); or in a restaurant too expensive for their personal tastes, so that, again, they would have gotten less value than the cash equivalent. But so far as appears, they picked the restaurant they liked most. Although it must be pretty monotonous to eat lunch the same place every working day of the year, not all the lawyers attended all the lunch meetings and there was nothing to stop the firm from meeting occasionally at another restaurant proximate to their office in downtown Chicago; there are hundreds.

An argument can be made that the price of lunch at the Cafe Angelo included rental of the space that the lawyers used for what was a meeting as well as a meal. There was evidence that the firm's conference room was otherwise occupied throughout the working day, so as a matter of logic Moss might be able to claim a part of the price of lunch as an ordinary and necessary expense for work space. But this is cutting things awfully fine; in any event Moss made no effort to apportion his lunch expense in this way.

AFFIRMED.