FREDERICK I. UNGER AND JACQUELINE M. UNGER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Unger v. Commissioner
Docket No. 9098-83.
United States Tax Court
T.C. Memo 1986-64; 1986 Tax Ct. Memo LEXIS 544; 51 T.C.M. (CCH) 458; T.C.M. (RIA) 86064; February 11, 1986. Sherin V. Reynolds, for the petitioners. Richard G. Convicer, and Powell W. Holly, Jr., for the respondent. CLAPP
MEMORANDUM FINDINGS OF FACT AND OPINION CLAPP, Judge: Respondent determined a deficiency in petitioners' *545 Federal income tax in the amount of $672.31 for the taxable year 1979. After concessions, the issues remaining for decision are: 1) whether petitioners are entitled to deduct the cost of meals as employee business expenses under section 162; [1] and 2) whether petitioners are entitled to deduct the cost of automobile air conditioning in the amount of $650 as a medical expense deduction under section 213. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioners Frederick I. Unger and Jacqueline M. Unger, husband and wife, resided in Danbury, Connecticut, at the time their petition herein was filed. Employee Business Expenses
During the taxable year 1979, Frederick Unger (hereinafter referred to as petitioner in the singular) was employed as a truck driver for the McLean Trucking Company. Petitioner reported for work at the truck terminal in Montgomery, New York, approximately *546 one hour driving time or 55 miles from his personal residence in Danbury, Connecticut. Petitioner maintained daily logs indicating the time of arrival at Montgomery, New York, the amount of time spent driving, the times and cities cargo was delivered, the times and cities petitioner stopped for meals, coffee, and, occasionally, safety breaks, and the time of return to Montgomery, New York. A typical trip would be a round trip between Montgomery, New York, and Woburn, Massachusetts. For example, on March 12, 1979, petitioner arrived at 10:30 p.m. at Montgomery, New York where he made a pre-trip inspection. At 12:30 a.m., March 13, 1979, petitioner stopped at Milldale, Connecticut, for a meal for one hour.He arrived at Woburn, Massachusetts, at 4:00 a.m. where petitioner was on duty, but not driving, until 5:15 a.m. Petitioner then drove to Milldale, Connecticut, where he stopped for a meal at 7:45 a.m. At 8:45 a.m., petitioner commenced driving back to Montgomery, New York, where he arrived at 10:30 a.m. The trip's duration was 12 hours. On January 27, 1979, on another round trip between Montgomery, New York, and Woburn, Massachusetts, petitioner left the terminal in Montgomery, *547 New York, at 3.00 a.m. At 5:15 a.m. he stopped in Milldale, Connecticut, for a meal for 1-1/4 hours. Petitioner then drove until 9:00 a.m. when he arrived at Woburn, Massachusetts and took a one hour safety break. Petitioner then commenced his return trip back and stopped at 11:15 a.m. for a second meal. He continued driving until 3:15 p.m. when he arrived at Montgomery, New York. The trip's duration was 12-1/4 hours. Petitioner also made trips to other cities in New England, such as Pawtucket, Rhode Island, and Shrewsbury, Connecticut. Petitioner returned to his home in Danbury, Connecticut after each trip where he would sleep. During the seven month period in question, petitioner made 126 turnaround trips. The trips averaged approximately 12-14 hours in length. Petitioner made safety breaks during only 24 of those trips. Such safety breaks consisted of petitioner resting or sleeping at the wheel of his truck. Petitioner was only allowed to work a 70-hour week and he would take the breaks in order not to be over the 70-hour limit. The dates and duration of the safety breaks are as follows: Date
Duration
January 18
2.5
January 24
1.0
January 25
2.0
January 27
1.0
February 1
1.75
February 24
2.0
March 6
2.0
March 9
.75 March 19
3.5
March 28
1.25
April 1
1.5
April 21
2.25
April 29
2.0: 2.0
May 8
1.25
May 10
2.0
May 12
2.25
May 21
2.0
May 25
2.0
May 29
1.5
May 31
1.5
June 20
1.0: 1.75
June 29
2.0
July 14
2.0
July 19
1.75
*548 The daily logs contain no entries as to the amounts petitioner spent for meals and coffee. Petitioner did not retain receipts for such expenditures.Petitioners used $12 per diem figure to claim meal expenses in the amount of $1,800. Medical Expense Deduction
Because of petitioner's allergies and asthma, petitioner's physician recommended that petitioner remain in an air conditioned environment. When petitioner purchased a new 1979 Mazda, he had air conditioning installed at a cost of $650. Petitioners claimed the cost of the automobile air conditioning as a medical expense on their 1979 return. Respondent disallowed this expense on the grounds that the cost did not exceed the increase in the fair market value of the car in which it was installed. OPINION 1. Employee Business Expenses.
Section 162(a)(2) allows a deduction for all ordinary and necessary expenses paid or incurred during the taxalbe year in carrying on a trade or business, including "traveling expenses (including amounts expended for meals and lodging * * *) while away from home in the pursuit of a trade or business * * *." Respondent contends that the meal expenses incurred by petitioner are *549 not deductible under section 162(a) because they were not incurred by petitioner while traveling away from home. Petitioners argue that because petitioner was away from home overnight, petitioner satisfies the sleep or rest rule enunciated in United States v. Correll,389 U.S. 299 (1967). In Correll, the Supreme Court approved respondent's application of the rule that travel "away from home" excludes all trips requiring neither sleep nor rest regardless of how many miles a given trip may have covered, or how many hours it may have taken. Although recognizing that the rule must make some arbitrary distinctions, the Court believed that the rule achieved "substantial fairness" in that it treats similarly all one-day travelers, be they intra-city commuters or traveling salesmen. Intrepreting the language of the statute, the Court stated: the statute speaks of "meals and lodging" as a unit, suggesting--at least arguably--that Congress contemplated a deduction for the cost of meals only where the travel in question involves lodging as well. Ordinarily, at least, only the taxpayer who finds it necessary to stop for sleep or rest incurs significantly higher living *550 expenses as a direct result of his business travel, and Congress might well have thought that only taxpayers in that category should be permitted to deduct their living expenses while on the road. * * * [389 U.S. at 304-305. Footnotes omitted.] In the instant case, during the vast majority of the trips, petitioner did not stop for a period of sleep or rest. Petitioners nevertheless contend that petitioner satisfied the sleep or rest rule because he was literally away from home overnight in that he usually began work during the night time one day and finished during the daylight hours of another. The fact that petitioner's regular working hours occur at night, or that they cover a portion of two days, however, is not material. Herrin v. Commissioner,28 T.C. 1303, 1305 (1957). The important fact is that it was not necessary for petitioner to sleep or rest, nor did he during his trip. As to those trips where petitioner did take safety breaks, petitioners have failed to show that such breaks were required for substantial sleep or rest. Such breaks were not taken on a regular basis. Petitioners have not shown that those trips where petitioner did *551 take safety breaks involved greater hours or further destinations then those where petitioner did take such breaks. Petitioners rely on the case of Anderson v. Commissioner,18 T.C. 649 (1952). However, in Anderson, the taxpayer, a railroad express employee, was released for a period of rest during each of his round trip runs which lasted between 16 to 18 hours. The Court specifically found that such rest periods were necessary. Furthermore, the rest period required by the sleep or rest rule contemplates "a stop of sufficient duration that it would normally be related to a significant increase in expenses." Barry v. Commissioner,435 F.2d 1290, 1291 (1st Cir. 1970), affg. 54 T.C. 1210 (1970). Petitioners have not shown that the type of rest period which petitioner took was the type which involves special arrangement or special expense. Petitioner's resting at the wheel does not constitute more than a mere pause from the daily work routine.[2] Thus, petitioner does not satisfy the sleep or rest rule and was not traveling away from home when his meal expenses were incurred.
*552 Additionally, even if petitioners had established that these expenses were incurred while away from home, petitioners have failed to meet the substantiation requirements of section 274(d). While the logs reveal the times and places of the meals, they do not show any amounts incurred for the meals. [3] Petitioners failed to produce any evidence which would prove such amounts. Therefore, respondent's determination on this issue is sustained.
2. Medical Expense Deduction.
Respondent does not dispute that the automobile air conditioning was for medical purposes. [4] Respondent contends, rather, that petitioners have failed to show that the expense exceeded the increase in value of the automobile. *553 Petitioners contend that because the air conditioning is easily installed and removed from the car, it is the type of capital expenditure which is deductible as a medical expense pursuant to section 1.213-1(e)(1)(iii), Income Tax Regs., which provides: a capital expenditure which is related only to the sick person and is not related to permanent improvement or betterment of property, if it otherwise qualifies as an expenditure for medical care, shall be deductible; for example, an expenditure for eye glasses, a seeing eye dog, artificial teeth and limbs, a wheel chair, crutches, an inclinator or an air conditioner which is detachable from the property and purchased only for the use of a sick person, etc. * * * [Emphasis added.] Unfortunately, petitioner has failed to present any evidence in the record as to whether the air conditioning is detachable from the car. A capital expenditure which is a permanent improvement to the property is deductible to the extent that it is in excess of the increase in value to the property. Gerard v. Commissioner,37 T.C. 826, 829-830 (1962). Respondent disallowed the deduction in the instant case on the basis that the *554 cost of the air conditioning did not exceed the increase in value to the car. Petitioners have the burden of proof on this issue. Rule 142(a), Tax Court Rules of Practice and Procedure. Petitioners did not present any evidence with respect to the value of the car. Therefore, respondent must be sustained on this issue. Because of concessions, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect during the taxable year in question.↩
2. See Stevens v. Commissioner,T.C. Memo. 1985-16; Siragusa v. Commissioner,T.C. Memo. 1980-68, affd. without published opinion 659 F.2d 1062↩ (2d Cir. 1981).
3. This Court has consistently held that such log books do not fulfill substantiation requirements of section 274(d). Hollesen v. Commissioner,T.C. Memo. 1979-269; Reynolds v. Commissioner,T.C. Memo. 1979-190; Hamilton v. Commissioner,T.C. Memo. 1979-186; Henson v. Commissioner,T.C. Memo. 1979-110↩.
4. Although respondent raised this issue for the first time at trial, respondent abandoned it on brief and therefore appears to have conceded the issue.↩