# Applicability of 18 U.S.C. § 207(c) to the Briefing and Arguing of Cases in Which the Department of Justice Represents a Party

Section 207(c) of title 18 forbids a former senior employee of the Department of Justice, for one year after his or her service ends, from signing a brief or making an oral argument in a case where the Department represents one of the parties

August 27, 1993

MEMORANDUM OPINION FOR THE DIRECTOR
OFFICE OF GOVERNMENT ETHICS

This memorandum responds to your request for our opinion whether 18 U.S.C. § 207(c) prohibits former high-level Department of Justice officials, within one year after their service in the Department ends, from filing briefs or making oral arguments on behalf of parties other than the United States in cases where the Department represents one of the parties. We conclude that the statute forbids these activities.

## I.

Section 207(c) of title 18 prohibits a senior employee, for one year after termination of service, from knowingly making a communication to or appearance before his former department in connection with a matter on which he seeks official action.[1] This Office construed an earlier, similar version of § 207(c) as prohibiting former officials from signing briefs or delivering oral arguments in cases where the Department of Justice represents the United States. *See, e.g.*, Memorandum for a United States Attorney, from Leon Ulman, Deputy Assistant Attorney General, Office of Legal Counsel, *Re: Former U.S. Attorneys — 18 U.S.C. 207(c)* (Oct. 22, 1980); Letter for a Former Official, from Ralph W. Tarr, Acting Assistant Attorney General, Office of Legal Counsel at 3 (Sept. 20, 1985) ("Tarr Memo"); Letter for an Independent Counsel, from Charles J. Cooper, Assistant Attorney General, Office of Legal Counsel at 5-6 (Apr. 29, 1987) ("Cooper I Memo"); Letter for an Independent Counsel from Charles J. Cooper, Assistant Attorney General, Office of Legal Counsel at 6 (Aug. 28, 1987) ("Cooper II Memo"). The Office of Government Ethics ("OGE") reached the same conclusion. *See The Informal Advisory Letters and Memoranda and Formal Opinions of the United States Office of Government Ethics, 1979-1988*, at 57 (1989) (Informal Advisory Letter No. 80 x 66,

---

[1] Section 207(d) contains an additional restriction that applies to the most senior officials in the executive branch: such officials may not contact senior officials in other departments and agencies. Our reasoning applies to both § 207(c) and § 207(d).

Aug. 1, 1980) ("OGE Letter No. 80"); *id.* at 283 (Informal Advisory Letter No. 82 x 13, Aug. 31, 1982); *Supplements to the Informal Advisory Letters and Memoranda and Formal Opinions of the Office of Government Ethics,* 62-63 (Informal Advisory Letter 89 x 20, Dec. 21, 1989).

Notwithstanding these prior positions, a memorandum to our files dated January 14, 1993 ("January 1993 Memorandum"), memorialized advice that § 207(c) does not preclude former senior officials from briefing and arguing cases in which the Department is or represents a party. Your recent letter about the January 1993 Memorandum argued that § 207(c) prohibits such advocacy, and that the amendments to § 207, which were passed in 1989, broadened, rather than narrowed, its scope. Letter for Daniel L. Koffsky, Acting Assistant Attorney General, Office of Legal Counsel, from Stephen D. Potts, Director, Office of Government Ethics (June 4, 1993). The question we now face is whether we should revert to our original interpretation of § 207(c) or should adopt the reasoning of the January 1993 Memorandum.

## II.

As first enacted in the Ethics in Government Act of 1978, Pub. L. No. 95-521, 92 Stat. 1824, 1865 — and before the passage of the 1989 amendments, Ethics Reform Act of 1989, Pub. L. No. 101-194, 103 Stat. 1716, 1717-18 — § 207(c) of title 18 prohibited a senior government employee (as defined in 18 U.S.C. § 207(d)) from making any oral or written communication to his former agency within one year of the termination of his employment, with the intent to influence the agency in connection with a particular matter in which the agency was interested.[2]

As we interpreted this version of § 207(c), it prohibited covered former officials of the Department of Justice from filing briefs or making oral arguments in cases where the Department represented a party. For example, as we stated in a 1987 letter:

> The no-contact rule of section 207(c) prohibits persons to whom it applies from making any oral or written communication with their former agency on behalf of anyone other than the United States, in connection with any matter pending in their former department, or in which their former agency has a direct and substantial interest. The Department of Justice has historically construed the section to preclude covered former Department of Justice officials from sign-

---

[2] The main elements of this version of § 207(c) were that a senior employee was prohibited from, (1) within one year of the termination of his employment, (2) "with the intent to influence," (3) "mak[ing] any oral or written communication" (4) to his former department or agency (5) "in connection with any judicial, rulemaking, or other proceeding . or other particular matter" (6) "which is pending before such department or agency or in which such department or agency has a direct and substantial interest." 18 U.S C § 207(c) (1988).

ing briefs or delivering oral argument in court cases where the Department of Justice is representing the United States. We have not construed it to preclude aiding and assisting in a "behind the scenes" fashion in such cases.

Cooper II Memo at 6; *accord* Cooper I Memo at 5-6 (containing identical language).

OGE also adopted this position. In a letter dated August 1, 1980, it squarely addressed whether 18 U.S.C. § 207(c) prohibited a former official from representing a private client in a suit against his former department within one year after he left that department. OGE concluded that such representation would have the "unavoidable intent of attempting to influence and to persuade the defendant in the lawsuit," and thus concluded that it would violate § 207(c). OGE Letter No. 80 at 57-58; *see also* 5 C.F.R. § 2637 (1993) (OGE guidelines prohibiting such representation).[3] Thus, this interpretation of § 207(c) was both longstanding and uniform in this Office and in OGE.[4]

## III.

The January 1993 Memorandum points to three possible reasons for reading the present version of § 207(c) as not prohibiting a former official of this Department from filing a brief or making an oral argument in a case where the Department represents a party. First, § 207(a), which forbids communications or appearances as to certain matters on which former officials worked or which were under their official responsibility, specifically mentions communications to or appearances before courts, but § 207(c) refers only to contacts with agencies. Therefore, according to the January 1993 Memorandum, Congress did not intend § 207(c) to reach the filing of briefs or the making of oral arguments in court cases, even if the former of-

---

[3] Moreover, in the only judicial opinion that addressed this issue, the court noted that § 207(c) "prevents the plaintiff [a former United States Attorney] . . . from involving [himself] in any matters opposed by the Department of Justice for a period of one year." *Sullivan v Director, Office of Personnel Management*, No. 81 C 3810 (N.D Ill. Jan. 7, 1982), *vacated as moot sub nom Devine v. Sullivan*, 456 U.S. 986 (1982)

[4] The January 1993 Memorandum suggests that two letters from this Office modified our interpretation of § 207(c), *id* at 4 n.8, but neither letter bears that construction In the first, we concluded that a former official was prohibited from representing a client by 18 U S C § 207(b)(1) which applied to matters that had been pending under the former official's responsibility. Letter for a Former Official, from Theodore B. Olson, Assistant Attorney General, Office of Legal Counsel at 2 (Apr. 17, 1981) We reserved comment on whether § 207(c) would have forbidden such an official from appearing in court if he avoided contact with Department personnel *Id.* at 2 n.*. Because this statement was irrelevant to our conclusion and simply reserved the question, it does not constitute a modification of this Office's interpretation of § 207(c) The second letter cited in the January 1993 Memorandum is inapposite because it involved a former official's representation in a case in which the Department was not a party but could potentially have participated as an amicus curiae Letter for a Former Official, from J Michael Luttig, Assistant Attorney General, Office of Legal Counsel (Oct. 24, 1990). We concluded that such representation would be permissible, but our reasoning included the crucial distinction that amici do not participate as parties and, under the rules of the court involved, the parties' briefs were not served on amici. *Id* at 2.

ficial's agency was served with the brief or was present for the argument. *Id.* at 9-10. Second, the amendments to § 207(c) in 1989 removed a previous reference to communications to agencies in connection with judicial proceedings. From this change, the January 1993 Memorandum inferred that the scope of the section had been narrowed. *Id.* at 11. Third, the January 1993 Memorandum argued that an attorney who files a brief or delivers an oral argument makes a communication to the court, not to any agency that is or represents a party to the case, *id.* at 3-7, and seeks the official action of the court but not of such an agency. *Id.* at 7-8.

### A.

As the January 1993 Memorandum points out, § 207(a) specifically mentions communications to or appearances before courts and § 207(c) does not. But the argument that § 207(c) therefore does not reach a former official's filing briefs or making oral arguments in a court case where his former agency represents a party, if valid, would have applied equally to the version of § 207 enacted in 1978. Like the version of § 207 now in effect, the law enacted in 1978 mentioned communications to courts in § 207(a) but not in § 207(c). Nevertheless, the settled interpretation of the 1978 version of § 207(c) was that it barred filing briefs or making oral arguments in court cases where the former official's agency was involved.

Congress's decision in 1989 to reenact § 207 with this same structure buttressed the previous interpretations of § 207(c). In fact, an earlier proposal to amend § 207 assumed that it extended to litigation. The proposal contained a specific exemption to allow former officials to represent clients in litigation against their agencies before the courts. S. 237, the "Integrity in Post Employment Act," would have retained in its essentials the structure of § 207(c) (before the 1989 amendments), except that it would have excluded from its prohibitions "an attorney appearing in a judicial proceeding before a court of the United States." S. Rep. No. 100-101, at 20 (1987). The Senate Report on the section containing the exemption tated that

> [t]his section permits an attorney, who would otherwise be forbidden by section 207(c) from making advocacy contacts in the Federal Government, to represent a client in a judicial proceeding before a court of the United States. In the absence of this provision, attorneys who take a high level Government position . . . could forfeit their only livelihood for the proscribed period after leaving Government service . . . . This section ensures that individuals in this position would not be able to make any advocacy contacts to any executive or legislative body, but could return to the courtroom on judicial business on behalf of a client.

*Id.* at 29. As these materials reveal, § 207(c) prohibited lawyers from representing clients in judicial proceedings, which would encompass filing briefs and making oral arguments. Congress did not pass the proposed exemption but instead eventually reenacted § 207 with the same structure (in relevant respects) as before. Congress thus left in place the existing prohibition against filing briefs and making oral arguments in court cases.

Furthermore, when Congress amended and reenacted § 207, the administrative interpretation that § 207(c) covered filing briefs or making arguments in court cases was a matter of public knowledge. OGE's 1980 opinion so holding had been published in 1987 in the *Ethics in Government Reporter.* We had set out our identical position in letters supplied to the Special Division of the District of Columbia Circuit that appoints Independent Counsel. By reenacting § 207 with a structure that was, in the relevant respect, identical to that of the earlier version, Congress can reasonably be seen as adopting this administrative construction. *Cf. Cottage Savings Ass'n v. Commissioner,* 499 U.S. 554, 561 (1991) ("'"Treasury regulations and interpretations long continued without substantial change, applying to unamended or substantially reĕnacted statutes, are deemed to have received congressional approval and have the effect of law."'") (quoting *United States v. Correll,* 389 U.S. 299, 305-06 (1967) (quoting *Helvering v. Winmill,* 305 U.S. 79, 83 (1938))).

## B.

As a result of the 1989 amendments, the present version of § 207(c) prohibits a senior employee from, (1) within one year of the termination of his employment, (2) "with the intent to influence," (3) "knowingly mak[ing] . . . any communication to or appearance before" (4) his former department or agency (5) "in connection with any matter" (6) "on which such person seeks official action by any officer or employee of such department or agency." 18 U.S.C. § 207(c)(1).

According to the January 1993 Memorandum's second argument for its new interpretation of § 207(c), the provision does not cover appearances before a court in which a former official's agency is litigating because the 1989 amendments removed language under which § 207(c) covered communications to an agency "in connection with any judicial, rulemaking, or other proceeding, application, request for a ruling or other determination, contract, claim, controversy, investigation, charge, accusation, arrest, or other particular matter" and replaced it with the phrase "in connection with any matter." *Id.* at 11. The removal of the language modifying the word "matter," however, shows that the coverage of the provision was *broadened*, not narrowed. Congress made the section applicable to *"any* matter," not just those matters specifically listed "or other particular matter[s]." The term "particular matter" had been construed as narrower than the word "matter."

In regulations issued in 1980, OGE had interpreted the "particular matter" language of § 207(c) as excluding certain kinds of matters:

> [Section 207(c)] does not encompass every kind of matter, but only a particular one similar to those cited in the statutory language, *i.e.*, any judicial or other proceeding, application, request for a ruling or determination, contract, claim, controversy, investigation, charge, accusation, or arrest. . . . Not included are broad technical areas and policy issues and conceptual work done before a program has become particularized into one or more specific projects.

5 C.F.R. § 2637.204(d) (1993); *see also id.* § 2635.402(b)(3) (stating that "particular matter" excludes certain kinds of matters). Thus, the regulation indicated that "particular matter" has a narrower meaning than "matter." In light of the natural meaning of the words and the published OGE interpretation of "particular matter," the elimination of the reference to "judicial . . . proceeding[s]" and "other particular matter[s]" does not support the new, narrower interpretation of § 207(c).

## C.

The January 1993 Memorandum also relied on two other phrases in § 207(c). The "communications" covered by § 207(c) must be "*to* . . . any officer or employee of the department or agency" in which the former official served. *Id.* (emphasis added). The January 1993 Memorandum argues that a brief is not directed "to" the Department but to the court. As with the structure of § 207, however, this language does not reflect any change from the 1978 version of the statute. The version of § 207(c) in effect before 1989 also required a communication "to" an officer or employee of the department or agency (or the department or agency itself). The settled interpretation of that language was that it covered briefs and arguments in a court case.

Moreover, the January 1993 Memorandum's interpretation of "communication to" does not comport with the realities of litigation. Briefs and oral arguments are directed not only to the court but also to the opponent, as part of a dialogue between the parties. The January 1993 Memorandum acknowledges that § 207(c) probably prohibits some forms of this dialogue — for example, "[a] colloquy between counsel in the courtroom." *Id.* at 13. But such statements are, like briefs and oral arguments, technically addressed to the court. The January 1993 Memorandum thus concedes that statements technically addressed to the court are also statements to opposing counsel, and this concession undercuts the conclusion of the January 1993 Memorandum. Written briefs and oral arguments, while more formal than some oral statements in court, are still elements of an exchange between counsel.

The 1989 amendments did add, as an element of the offense under § 207(c), that the former official must "seek official action" from his former department or agency. Whatever the effect of this change in other contexts, however, we do not believe that the new language alters the result here.

The reasoning of the prior opinions of this Office and OGE answers the question whether a former official who files a brief or makes an oral argument "seeks official action" from an agency that is or represents a party to the case. The prior opinions conclude that an attorney who takes such action is trying to influence the activities of the agency involved. As OGE stated in its 1980 letter, briefs and oral argument "have the additional unavoidable intent of attempting to influence and to persuade the defendant in the lawsuit. The role of the plaintiff's lawyer is in large part to have the defendant [Department] change its position as a result of what plaintiff argues in court." OGE Letter No. 80 at 57-58;[5] *see* Tarr Memo at 3 (noting OGE's reasoning in concluding that a former official cannot brief or argue cases within one year of termination). Under this reasoning, an attorney filing a brief or making an oral argument "seeks official action" from the officers and employees of an agency or department that is or represents a party to the case.[6]

The representation of the United States in litigation is an official act of the attorney who works on the case. An essential part of this official act is the presentation of the government's arguments, both orally and in written briefs. Although a former official's briefs and arguments are formally addressed to the court, rules of procedure provide each party with an opportunity to rebut the other's arguments and require that briefs be served on counsel for each party. *See, e.g.*, Sup. Ct. R. 25 (time for filing briefs); *id.* 29 (service of briefs); *id.* 28 (structure of oral argument); Fed. R. App. P. 31 (time for filing briefs and service of briefs); *id.* 34 (oral argument). The provision of a period during which an adverse party can formulate arguments constitutes a recognition — and expectation — that the parties respond to their opponents' arguments. A litigator's briefs and arguments seek to persuade the opponent that his view of the case is erroneous or, at the least, seek to frame the dispute and win concessions about the issues and principles that should lead to a

---

[5] OGE's informal Advisory Opinion 80 x 6 gave two different grounds for concluding that a former official could not undertake the representation there· first, that a communication directed to the court was also necessarily an attempt to persuade the adverse party (the official's former agency), *id* , and second, that on the facts of the case the former official would be likely to interact with officials of his former agency *Id.* at 58. The first ground is sufficient to decide the issue here. As is noted above, however, a brief or oral argument also involves an interaction between counsel

[6] The January 1993 Memorandum suggests that, with respect to the "official action" requirement, there is no basis for distinguishing briefs from advocacy pieces in newspapers or correspondence to the Department on firm letterhead, if the former official's name appears on that letterhead. *Id* at 6 & n 11 Briefs can be distinguished from these other forms of communication, however, because the latter are not nearly so focused and directed as communications in a court case. Briefs are sent from the litigating counsel to named attorneys in the Department and thus constitute a communication between litigating *attorneys*, whereas the other forms of communication either are not from a specific attorney (e.g , inclusion of a name on letterhead) or are not to a specific Department attorney (e g , advocacy pieces in newspapers). Furthermore, most advocacy pieces are written on behalf of the author, and § 207(c)(1) penalizes only communications "on behalf of any other person "

decision by the court. Moreover, in multi-party cases in which the Department appears, a party's briefs or arguments may be aimed, in part, at enlisting the United States' support for at least some of that party's positions, as against the other parties. Thus, briefing and oral argument, by their nature, not only request action by the court but also "seek official action" by the Department, in the form of modifications to or abandonment of arguments or claims. The 1989 amendments' reference to such "official action," therefore, does not affect the applicability of § 207(c) to briefing and oral argument.

Finally, the legislative history of the 1989 amendments does not indicate any intent to narrow the application of § 207(c), by the addition of the "seeks official action" language or otherwise, in situations where a former official submits a brief or makes an argument to a court. In fact, the only intent expressed — and the apparent impetus for the amendments to § 207(c) — was Congress's rejection of the conclusion reached by the United States Court of Appeals for the District of Columbia Circuit in *United States v. Nofziger*, 878 F.2d 442, *cert. denied*, 493 U.S. 1003 (1989), that an element of the offense was that the defendant knew of all the facts making his conduct illegal.[7] There is no suggestion in the legislative history that Congress intended to narrow the scope of § 207(c).[8]

## IV.

Thus, before this year, this Office interpreted § 207(c) to prohibit former senior officials from briefing and arguing cases in which the Department is or represents a party. OGE, too, consistently held this view. There is no persuasive evidence that Congress intended that the amendments to § 207(c) would produce a different result. Moreover, application of § 207(c) to the briefing and arguing of cases comports with the language and history of the statute.[9]

---

[7] Senator Levin emphasized this concern, stating that

> [i]n the recently decided case involving former Presidential aide Lyn Nofziger, the court of appeals held that under the current law, the word "knowing" modified all the elements of the offense including the provision that the particular matter was pending before the subject department or agency or that the agency had a direct and substantial interest in the particular matter That judicial interpretation does not reflect congressional intent We correct that misinterpretation in this bill by including a knowing standard only for the act of making the communication with the intent to influence and state that the offense is committed if the former employee seeks official action by an agency or department employee There is no requirement, here, that the former employee know that the particular matter on which he or she is lobbying was a matter of interest or was pending before the subject agency or department Thus, we are able to set the record straight on this matter.

135 Cong. Rec 29,668 (1989).

[8] *See id* (Section-by-section analysis describing new version of § 207(c) as "similar to current law" and failing to indicate any changes in scope of § 207(c).)

[9] The January 1993 Memorandum suggested that the rule of lenity is relevant because § 207 is a penal statute. *Id.* at 12. Even assuming that the rule would otherwise be pertinent, it applies only if "after a court has '"seize[d] every thing from which aid can be derived"' it is still 'left with an ambiguous statute.'" *Chapman v. United States*, 500 U S 453, 463 (1991) (quoting *United States v. Bass*, 404 U.S. 336, 347 (1971) (quoting *United States v. Fisher*, 6 U S (2 Cranch) 358, 386 (1805))); *see Moskal v. United States*,

All of these factors militate against the new interpretation set forth in the January 1993 Memorandum. Accordingly, we conclude that the January 1993 Memorandum was in error and instead return to the interpretation of § 207(c) that this Office took before that memorandum was written.

DANIEL L. KOFFSKY
*Acting Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

498 U S 103, 108 (1990) ("[W]e have always reserved lenity for those situations in which a reasonable doubt persists about a statute's intended scope even *after* resort to 'the language and structure, legislative history, and motivating policies' of the statute ") (quoting *Bifulco v United States*, 447 U S 381, 387 (1980)) The rule of lenity could not apply here because the language and history of § 207(c) show that it prohibits former officials from briefing and arguing cases against the United States, and no ambiguity remains.