T.C. Memo. 2005-259

UNITED STATES TAX COURT

STEVE J. WORK, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 11458-02, 17265-02.    Filed November 2, 2005.

Steve J. Work, pro se.

Robert A. Varra, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, Judge:  Respondent determined deficiencies of
$3,737, $4,162, and $13,994 for 1998, 1999, and 2000,
respectively.  The issues for decision are whether (1) petitioner
failed to report $9,031 of wages from Plastec Products, Inc.
(Plastec), in 2000, (2) petitioner substantiated deductions in
excess of amounts respondent allowed or conceded for 1998, 1999,

and 2000, and (3) petitioner is liable for additional self-employment tax in 1999 and 2000.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Confronted with petitioner's refusal to work toward a stipulation of facts, on September 3, 2004, respondent filed a motion to show cause why proposed facts and evidence should not be accepted as established pursuant to Rule 91(f). Respondent attached to his motion a proposed stipulation of facts and exhibits. On September 7, 2004, the Court issued an order to show cause under Rule 91(f), requiring petitioner to file a response on or before September 27, 2004, as to why matters set forth in respondent's motion should not be deemed admitted. On October 12, 2004, petitioner filed a response to the Court's order to show cause. On October 20, 2004, the Court made absolute its order to show cause under Rule 91(f), finding that petitioner's response was evasive and not fairly directed to respondent's proposed stipulation of facts and ordering that the facts and evidence set forth in respondent's proposed stipulation of facts were deemed established, and the exhibits in the proposed stipulation of facts were received into evidence and made a part of the record of the cases. More than 2 months after

the trial of these cases, petitioner filed a motion to vacate the October 20, 2004, order, which we denied.

FINDINGS OF FACT

Accordingly, pursuant to Rule 91(f), the facts set forth in the Rule 91(f) motion are deemed stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time he filed the petitions, petitioner resided in Monument, Colorado.

I. Additional Income for 2000

On his 2000 Federal income tax return, petitioner reported wages totaling $87,254. Petitioner attached to his 2000 return a Form W-2, Wage and Tax Statement, from Synthes USA reflecting wages of $69,404.38 and an earnings statement from Plastec for the pay period ending May 27, 2000, and a pay date of June 1, 2000, reflecting year-to-date wages of $17,850. Petitioner also attached a statement to his 2000 return reflecting that he had not yet received a Form W-2 from Plastec and that he planned to file an amended return when he received the Form W-2 from Plastec reflecting the correct amount of the total wages he earned from Plastec during 2000. Plastec paid petitioner $26,881 in wages in 2000.[1]

---

[1] The record does not contain an amended income tax return for 2000 for petitioner.

II.  Disallowed Deductions Claimed by Petitioner

    A.  1998

    On his 1998 Federal income tax return, petitioner claimed a $14,000 deduction for moving expenses.

    During 1998, Teledyne Water Pik (Teledyne) reimbursed petitioner for "1998 Relocation and Moving Expenses".  An attachment to a November 20, 1998, memorandum from an employee of Teledyne regarding petitioner's "1998 Relocation and Moving Expenses" lists the expenses as follows:

| Type of Payment | Payee | Date | Amount of Expense |
| --- | --- | --- | --- |
| Temp housing | Carousel Properties | 3/2/98 | $960.00 |
| Temp housing | Carousel Properties | 3/2/98 | 731.91 |
| Storage | Golden Transfer Co | 6/4/98 | 1,997.00 |
| Storage | Golden Transfer Co | 7/1/98 | 483.19 |
| Storage | Golden Transfer Co | 7/31/98 | 483.19 |
| Realty close | Work | 2/20/98 | 8,569.00 |
| Relocation allow | Work | 2/20/98 | 4,154.00 |

Respondent disallowed petitioner's moving expenses in full.

    B.  1999

    On his 1999 Federal income tax return, petitioner claimed a $2,528 deduction for gifts to charity by cash or check, a $960 deduction for gifts to charity other than by cash or check, and "job expenses and most other miscellaneous deductions" totaling $8,157.  On his Schedule C, Profit or Loss From Business, petitioner claimed $9,273 in total expenses and listed $23 for cost of goods sold.

    In the notice of deficiency, respondent disallowed all of these amounts in full.

C. <u>2000</u>

On his 2000 Federal income tax return, petitioner claimed an $11,792 deduction for home mortgage interest, a $1,520 deduction for gifts to charity by cash or check, and "other miscellaneous deductions" totaling $9,184.  On his Schedule C, petitioner claimed $19,690 in total expenses.

In the notice of deficiency, respondent disallowed $6,862 of petitioner's home mortgage interest deduction and disallowed petitioner's charitable contribution deduction, other miscellaneous deductions, and Schedule C expenses in full.[2]

## OPINION

Generally, respondent's deficiency determinations set forth in the notices of deficiency are presumed correct, and petitioner bears the burden of showing the determinations are in error. Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933). Section 7491(a), however, shifts the burden of proof to the Commissioner with respect to a factual issue affecting the tax liability of a taxpayer who meets certain preliminary conditions. Petitioner failed to cooperate with respondent, and he did not claim that section 7491(a) applies.  Accordingly, section 7491(a)

---

[2]  Respondent disallowed $20,279 in Schedule C expenses. Petitioner, however, claimed only $19,690 in Schedule C expenses. This discrepancy can be accounted for in the Rule 155 computation.

does not apply in these cases, and petitioner bears the burden of proof.

## I. Additional Income for 2000

Petitioner claimed he reported the additional $9,031 ($26,881 earned minus $17,850 reported as wages) of wages from Plastec on his Schedule C attached to his 2000 return. The Schedule C lists petitioner's business as "Quality Consulting" and reports gross receipts of $3,604. Petitioner also claimed that the $9,031 of additional income reported by Plastec was an error by Plastec.

Petitioner's claims are not credible and are contradicted by the record. Petitioner is deemed to have admitted that Plastec paid him $26,881, and not $17,850, in 2000. The amount of gross receipts listed on the 2000 Schedule C ($3,604) bears no relation to the additional $9,031 of income petitioner earned from Plastec in 2000. Furthermore, petitioner attached a statement to his 2000 return admitting that the amount of income he reported from Plastec was incorrect and that he would need to amend his 2000 return because he had not yet received from Plastec a Form W-2 for 2000.

Accordingly, we conclude that petitioner failed to report $9,031 of wages from Plastec in 2000.

II.  Substantiation of Deductions

Taxpayers are required to maintain records that are sufficient to enable the Commissioner to determine their correct tax liability.  See sec. 6001; sec. 1.6001-1(a), Income Tax Regs. In addition, the taxpayer bears the burden of substantiating the amount and purpose of the item for the claimed deduction.  See Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976).

A.  1998 (Moving Expenses)

Section 217(a) allows a deduction for moving expenses paid or incurred during the taxable year in connection with the commencement of work by the taxpayer as an employee or as a self-employed individual at a new principal place of work.  Respondent concedes that petitioner satisfied the conditions for allowance imposed by section 217(c).  Section 217(b)(1) provides, in relevant part:

> the term "moving expenses" means only the reasonable expenses--
>
>     (A) of moving household goods and personal effects from the former residence to the new residence, and
>
>     (B) of traveling (including lodging) from the former residence to the new place of residence.

Section 217(b) was amended to read as above by the Omnibus Budget Reconciliation Act of 1993 (OBRA), Pub. L. 103-66, sec. 13213(a)(1), 107 Stat. 473.  The amendments made by OBRA section

13213 apply to expenses incurred after December 31, 1993. OBRA sec. 13213(e), 107 Stat. 475. Before its amendment by OBRA, former subparagraphs (D) and (E) of section 217(b)(1) allowed deductions for expenses of meals and lodging while occupying temporary quarters and qualified residence sale or purchase expenses.

Petitioner incurred his moving expenses after December 31, 1993. Accordingly, any expenses for temporary housing, for the sale of his former residence, and for the purchase of a new residence are not deductible pursuant to section 217. Furthermore, section 217 does not allow a deduction for relocation allowances.

Section 1.217-2(b)(3), Income Tax Regs., provides:

Expenses of moving household goods and personal effects include expenses of transporting such goods and effects from the taxpayer's former residence to his new residence, and expenses of packing, crating, and in-transit storage and insurance for such goods and effects. * * * Expenses of storing and insuring household goods and personal effects constitute in-transit expenses if incurred within any consecutive 30-day period after the day such goods and effects are moved from the taxpayer's former residence and prior to delivery at the taxpayer's new residence. * * * Expenses of moving household goods and personal effects do not include, for example, storage charges (other than in-transit) * * * .

On May 22, 1998, petitioner sold his house in Northglenn, Colorado. On May 27, 1998 petitioner purchased a house in Fort Collins, Colorado. Petitioner, however, presented no evidence regarding whether the items in storage were moved from his former

residence or when the stored items were delivered to his new residence. Some of the dates associated with the storage--July 1 and 31, 1998--raise further questions regarding whether the storage was associated with in-transit expenses. Petitioner's testimony regarding moving expenses related solely to 2000.

After reviewing the evidence, we would have sustained respondent's determination disallowing petitioner's moving expenses for 1998. On brief, however, respondent concedes that petitioner is entitled to a $483.19 deduction for moving expenses (related to storage costs) for 1998. We accept this concession and conclude that petitioner is not allowed a deduction for moving expenses for 1998 in excess of the amount respondent conceded.

B. <u>1999 and 2000</u>

1. <u>Charitable Contributions</u>

Respondent concedes that donations petitioner made to the Denver Museum of Natural History (DMNH) may qualify as deductions pursuant to section 170. Respondent concedes that petitioner is entitled to deduct cash contributions to the DMNH of $687.50 and $675.81 for 1999 and 2000, respectively. These concessions reflect petitioner's membership fee of $100 each year and mileage (based on noncontemporaneous summaries) for petitioner's trips to the DMNH. Respondent's concession for 1999 also appears to reflect a $50 donation petitioner testified that he made in 1999

($100 membership fee plus $537.50 mileage deduction equals $637.50 plus $50 donation, per petitioner's testimony, equals $687.50 concession).

Petitioner testified that in 1999 he donated an antique medicine bag (bag) to the DMNH. Petitioner valued the bag at $960 and claimed a deduction for a gift to charity of $960 other than by cash or check on his 1999 return. On his 1999 return, petitioner stated that he inherited the bag in 1987 and that the donor's cost or adjusted basis in the bag was zero dollars.

Petitioner attached to his 1999 return an "inspection request" he had submitted on November 29, 1998, to the DMNH. Petitioner stated the item to be valued was a "Medicine Bag". Petitioner estimated the value of the bag to be "$101-$500". Petitioner wrote: "Requester may donate bag to DMNH if can be displayed." (Emphasis added.)

On May 24, 1999, Joyce Herold, Curator of Ethnology, Department of Anthropology, noted on the inspection request that the bag was "probably of Jicarilla Apache origin" and dated the bag circa 1890. In a separate memorandum dated May 24, 1999, Ms. Herold advised petitioner: "If you want to donate the pouch, we would be delighted. * * * You can take as an IRS charitable deduction the full appraised value of the piece. However, the promise of exhibition is not possible, * * * . Thanks for leaving the piece for my inspection". (Emphasis added.)

Petitioner testified that Joe Stevens appraised the bag at $1,900. Petitioner testified that he donated the bag to the DMNH, and Ms. Herold could confirm this. Petitioner did not call Mr. Stevens or Ms. Herold as a witness. We infer that their testimony would not have been favorable to petitioner. See Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947).

To the extent that petitioner relies on his own testimony to establish that he donated the bag, we found petitioner's testimony to be conclusory and contradictory of the documentary evidence. Petitioner stated the value of the bag to be $101-$500--far less than the $960 he claimed. Petitioner wrote that he might donate the bag if it would be displayed (suggesting he would not donate the bag if it was not displayed), and petitioner was informed that the bag would not be displayed. Furthermore, Ms. Herold's memorandum dated May 24, 1999, makes clear that petitioner had not yet donated the bag.

The Court is not required to accept petitioner's unsubstantiated testimony. See Wood v. Commissioner, 338 F.2d 602, 605 (9th Cir. 1964), affg. 41 T.C. 593 (1964). Under the circumstances presented here, we are not required to, and generally do not, rely on petitioner's testimony to sustain his burden of establishing error in respondent's determinations. See Lerch v. Commissioner, 877 F.2d 624, 631-632 (7th Cir. 1989),

affg. T.C. Memo. 1987-295; Geiger v. Commissioner, 440 F.2d 688, 689-690 (9th Cir. 1971), affg. per curiam T.C. Memo. 1969-159; Tokarski v. Commissioner, 87 T.C. 74, 77 (1986).  Accordingly, we conclude that petitioner has failed to establish that he donated the bag in 1999, and we sustain respondent's determination to disallow this deduction.  See also sec. 1.170A-13, Income Tax Regs. (regarding record-keeping requirements for deductions for charitable contributions).

Petitioner also deducted as charitable contributions the amounts he spent purchasing lunches while volunteering at the DMNH during 1999 and 2000.  Reasonable expenditures for meals incurred while away from home in the course of performing donated services are deductible.  Sec. 1.170A-1(g), Income Tax Regs. "While away from home" has the same meaning in section 1.170A-1(g), Income Tax Regs., as in section 162 and the regulations thereunder.  Id.  Under section 162, a taxpayer can deduct the cost of meals when "away from home" only when the travel in question involves an overnight stay.  United States v. Correll, 389 U.S. 299, 302, 304 (1967).

Petitioner presented no evidence of lodging or overnight stays associated with the lunch expenses he deducted.  Petitioner also submitted no documents to substantiate the costs of his meals.  See sec. 1.170A-13, Income Tax Regs. (regarding recordkeeping requirements for deductions for charitable

contributions). Accordingly, we sustain respondent's determination to disallow the costs of petitioner's lunches at the DMNH as deductions for 1999 and 2000.

Petitioner also claimed that he made charitable contributions to the Northern Colorado Woodcarvers Association (NCWA) and the Buffalo Creek Gun Club (BCGC). Petitioner presented no evidence of the amounts he gave to NCWA or BCGC. See id. Additionally, there is no evidence that contributions to NCWA or BCGC qualify as "charitable contributions" under section 170(c). Accordingly, we sustain respondent's determinations to disallow the remainder of petitioner's charitable contribution deductions for 1999 and 2000 that respondent did not concede.

## 2. Home Mortgage Interest

Respondent allowed petitioner $4,930 of home mortgage interest as a deduction for 2000. At trial, petitioner submitted a settlement statement concerning a house he purchased in 2000 in Monument, Colorado. The settlement statement listed: (1) $370.65 of interest paid from October 17 to November 1, 2000; (2) $611.50 for a loan origination fee; and (3) $2,446 for a broker discount. Assuming arguendo that the $370.65 in interest equals a daily interest rate of $24.71 ($370.65 divided by 15 days), petitioner paid $24.71 in interest per day on the mortgage from October 17 through December 31, 2000 (76 days), and the "total interest" would be $1,877.96 ($24.71 times 76). This "total

interest" ($1,877.96) plus the a loan origination fee ($611.50) plus the broker discount ($2,446) equals $4,935.46. The $5.46 difference is probably attributable to the declining amount of interest charged as the principal of the mortgage was paid down. Accordingly, we conclude that the settlement statement is insufficient evidence to allow petitioner a deduction greater than the $4,930 respondent allowed.

Petitioner testified that he paid mortgage interest on a house other than the house he purchased in Monument, Colorado. Petitioner presented no documentary evidence to support this assertion.

When a taxpayer establishes that he has incurred deductible expenses but is unable to substantiate the exact amounts, we can estimate the deductible amounts, but only if the taxpayer presents sufficient evidence to establish a rational basis for making the estimates. See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). In estimating the amounts allowable, we bear heavily upon the taxpayer whose inexactitude is of his own making. See Cohan v. Commissioner, supra at 544.

Petitioner relies on his own testimony. The Court is not required to accept petitioner's unsubstantiated testimony. See Wood v. Commissioner, supra at 605. We found petitioner's testimony to be general, vague, and conclusory. Under the

circumstances presented here, we are not required to, and generally do not, rely on petitioner's testimony to sustain his burden of establishing error in respondent's determinations.  See Lerch v. Commissioner, supra at 631-632; Geiger v. Commissioner, supra at 689-690; Tokarski v. Commissioner, supra at 77.

We shall not rely on the Cohan rule as petitioner has not presented sufficient evidence to establish a rational basis for making an estimate.  Accordingly, we conclude that petitioner has failed to establish that he paid any mortgage interest on a house other than his house in Monument, Colorado.

Petitioner testified that he borrowed against a life insurance policy to pay "home mortgage interest" during 2000.  Petitioner further testified that he borrowed this money for a downpayment on a house and the company that lent him this money did not place a mortgage on the house.

Section 163(h)(1) generally disallows a deduction for personal interest.  An exception to this rule is "qualified residence interest".  Sec. 163(h)(2)(D).  Qualified residence interest includes "acquisition indebtedness" and "home equity indebtedness".  Sec. 163(h)(3)(A).  Acquisition indebtedness and home equity indebtedness must be secured by a residence.  Sec. 163(h)(3)(B)(i)(II) and (C)(i).

The amount petitioner borrowed against his insurance policy was not secured by his house.  We conclude that any interest paid on this loan is not deductible.  Sec. 163(h).

Accordingly, we sustain respondent's determination to disallow $6,862 of petitioner's home mortgage interest deduction for 2000.

### 3.  Miscellaneous Deductions and Schedule C Items

Petitioner presented no evidence regarding his "job expenses and most other miscellaneous deductions" for 1999, his "other miscellaneous deductions" for 2000, and his Schedule C expenses and cost of goods sold for 1999 and 2000.  Accordingly, we sustain respondent's determinations regarding these amounts.  See Rule 142(a); Welch v. Helvering, 290 U.S. at 115.

## III.  Self-Employment Tax

At trial, petitioner briefly disputed respondent's determination of self-employment tax.  Respondent determined, on the basis of the disallowed Schedule C deductions and cost of goods sold, that petitioner had additional self-employment income during 1999 and 2000.

Section 1401 imposes self-employment tax on self-employment income.  Section 1402 defines net earnings from self-employment as the gross income derived by an individual from the carrying on of any trade or business by such individual less allowable deductions attributable to such trade or business.

We conclude in accordance with section 1401 that petitioner is liable for additional self-employment tax in 1999 and 2000 on his additional self-employment income from the disallowed Schedule C deductions and cost of goods sold.

IV.  Conclusion

To reflect respondent's concessions at trial and on brief, Rule 155 computations will be necessary.

To reflect the foregoing,

Decisions will be entered
under Rule 155.