IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

| | | |
|---|---|---|
| MICHAEL D. EVANS | ) | |
| and KHWANTRA EVANS, | ) | |
| | ) | |
| Plaintiffs, | ) | TC-MD 180391G |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF REVENUE, | ) | |
| State of Oregon, | ) | |
| | ) | |
| Defendant. | ) | **DECISION** |

This case concerns the deductibility of unreimbursed employee business expenses.

Plaintiffs (taxpayers) appealed from Defendant's (the department's) assessment for tax year

2015. Plaintiff Michael D. Evans (Mr. Evans) appeared *pro se* and testified. Melinda Emerson

appeared for the department and did not call any witnesses. Taxpayers' exhibits 1 to 6 and the

department's exhibits A to C were admitted without objection.

## I. STATEMENT OF FACTS

At all times relevant to this appeal, Plaintiffs lived in Portland, where Mr. Evans—a

journeyman electrician—was a member IBEW's local union ("Local 48"). At the same time,

Mr. Evans ran his own business managing rental properties, called "AHT."

IBEW members get jobs by personally appearing at union halls. The first step is to go to

the union hall and sign the register of applicants—the "book." A contractor who wishes to

employ an electrician within a given local's jurisdiction contacts that local, which then selects an

applicant according to agreed priority rules and refers that applicant to the prospective employer.

Members must personally appear at the union hall to be dispatched to an employer. Once

applicants are hired, the employer assigns them to one or more job sites.

In 2015, Mr. Evans traveled to IBEW's local unions in Seattle ("Local 46") and Everett, Washington ("Local 191") for employment. He traveled to the union halls in those cities, as well as to a Local 191 satellite office in Wenatchee to register his availability to work in an outlying zone of that region. Mr. Evans testified that he was unable to find work in Local 48's jurisdiction that year, although he had worked exclusively out of the Local 48 hall the year before. On cross-examination, he testified that he did not provide Defendant with a dispatch report showing his work locations in 2014 because he did not consider information from a prior year relevant. His 2014 return attributed all of the union dues for which he claimed a deduction that year to Local 48. (Ex 5 at 6.)

Mr. Evans performed work for two employers in 2015: Cupertino Electric Inc. and Sequoyah Electric, LLC. He worked for Cupertino from January 13, 2015, to April 23, 2015. (Ex 4 at 2.) His job site was in in Quincy, Washington, within an outlying zone of Local 191's jurisdiction. He was employed by Sequoyah from June 11, 2015, to November 13, 2015. (*Id.*) He worked for Sequoyah at job sites in Everett and Redmond, Washington, located respectively in the jurisdictions of Local 191 and Local 46, and worked exclusively at the Redmond location beginning August 24, 2015. (Ex 4 at 1.) Personnel records from Sequoyah show Mr. Evans's daily hours of work during the period of his employment with that company. (Ex 4 at 7–12.)

Mr. Evans tracked his mileage on a 2015 calendar. (Ex 3.) At the beginning of the Cupertino job, the entry for January 12 noted two destinations: Wenatchee and Quincy. Entries in the next few weeks included "Quincy" at the beginning of each week and "home" at the end of each week. The word "Quincy" disappeared thereafter, although the mileage of each trip remained the same—269 miles—and the notations "work" and "home" remained. By the end of March, the notation "269" was placed on the calendar twice per week without the words "work"

or "home." Trips while working for Sequoyah followed a similar pattern. On the first day, the entry read "Work, Everett, 210 Local, 8 miles job"—indicating that he had driven 210 miles to accept work at the union hall that day, then eight miles to the job site. Subsequent biweekly entries either stated "work" and gave a mileage, or just gave a mileage. The mileage was at first either 213 or 210; beginning August 24, the mileage was either 196 or 191.

The calendar recorded other trips as well. Trips for Mr. Evans's rental business were typically marked either with "AHT," with "HD" or "L"—representing retail stores where he purchased supplies—or with a destination city where he looked at a rental property. Additional trips were identified by destination, such as midweek trips to Ephrata to deposit his paycheck during the period he worked in Quincy. Other trips were identified with the notation "taxes," referring to trips to Mr. Evans's tax preparer.

In some cases, the combination of destination and mileage in an entry revealed it was a round trip from Plaintiffs' home in Portland. Those daily round trips typically occurred during periods when Mr. Evans was unemployed, and he testified that he drove to union halls to sign books or to attempt to take work. Nearly all of the day trips were notated "AHT."

Recorded odometer readings for the beginning of each work week were typically, but not always, identical to the end of the previous work week. When cross-examined about the apparent lack of personal mileage, Mr. Evans testified that he had multiple vehicles and drove another car over the weekend. Calendar notations reference various vehicles: a 2001 Chevy Blazer, a 2015 Passat, and a 350Z. Mr. Evans testified that he drove the Blazer to work until it broke down and he replaced it with the Passat, and that he drove another car over the weekends.

Additional details from the mileage log are included in the analysis where relevant.

/ / /

Relations between IBEW members and employers are governed in each local's jurisdiction by a labor agreement between that local and the contractors who employ union members there. Plaintiffs provided a copy of Local 46's labor agreement effective during the year at issue, as well as Local 48's agreement in force in 2018. (Ex 1 at 41–82, 1–40.)

Section 3.20 of Local 46's labor agreement provides:

"(a) *Subsistence*. On all jobs requiring the Employee to remain away from home overnight, the Employer shall furnish reasonable meals, lodging, and other necessary expenses. * * *.

"(b) *Travel Time Pay*. The Employer shall provide transportation and pay for actual travel time at the regular straight time rate of pay, but in no case to exceed eight (8) hours pay in any one (1) day.

"* * * * *

"(d) *Mileage*. The Employer shall furnish transportation to all workers during actual working hours on all jobs, traveling from shop to job, job to job, and job to shop. When a worker is requested by the Employer to use the worker's private automobile, the Employer will reimburse the worker for the use of their automobile at the rate permitted by the IRS per mile traveled, plus all parking fees. * * * Workers may use their own automobiles for their personal transportation to and from the job, before and after working hours, as provided for elsewhere in this section."

Section 3.21 provides that subsistence pay is not owed to employees hired from the same zone as the job or to employees dispatched to a job within 35 miles of the employer's place of business. (Ex 1 at 59–60.) Where employees are required to report directly to a job site within the zone where they signed the out-of-work list, that job site is considered the same as the employer's place of business. (*Id*. at 60.)

On their 2015 schedule A, Plaintiffs claimed a $15,508 deduction for Mr. Evans's mileage as an employee business expense, which Defendant disallowed. Plaintiffs also claimed $11,526 in meals expenses and $21,625 in travel expenses, mainly based on Mr. Evans's reported number of days worked at each job site multiplied by that job site's federal *per diem*

rates for meals and lodging, respectively.[1]  (Exs 5 at 2, 6 at 2; Ex A at 4.)  Defendant disallowed both of those deductions as well.  Plaintiffs now seek to have Defendant's adjustments reversed.[2]

## II.  ANALYSIS

The issue is whether Mr. Evans's vehicle and *per diem* expenses are deductible under section 162(a) of the federal Internal Revenue Code (IRC).

The IRC's definition of taxable income is applicable to the issues in this case.  *See* ORS 316.022(6); 316.048.[3]  Likewise, administrative and judicial interpretations of the federal income tax law are applicable because Defendant is bound to follow those interpretations where practicable.  *See* ORS 316.032(2).  Because Plaintiffs are the only parties seeking relief from the court, they must bear the burden of proof.  *See* ORS 305.427.

IRC section 162(a) allows a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business[.]"  Specifically included among such expenses are "traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business[.]"  IRC § 162(a)(2).  Expenses for travel or use of a personal automobile require evidence beside a taxpayer's testimony; they are not deductible

> "unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating the taxpayer's own statement (A) the amount of such expense or other item, (B) the time and place of the travel or the date and description of the gift, (C) the business purpose of the expense or other item, and (D) the business relationship to the taxpayer of the person receiving the benefit."

---

[1] Plaintiffs' form 1040 Overflow Statement indicates the per diem rates accounted for $11,441 of the meals deduction.  No evidence supporting the additional $85 expense claimed was submitted.

[2] At trial, Plaintiffs also challenged Defendant's treatment of their $7,368 deduction for "other business expenses."  Because Defendant accepted that deduction as filed, there is no issue for the court to consider.  (*See* Ex 6 at 2.)

[3] The court's references to the Oregon Revised Statutes (ORS) are to 2013.

IRC § 274(d); *see also* IRC § 280F(d)(4)(A)(i).

Defendant argues that no deduction can be allowed here because: (1) the expenses could have been reimbursed by Mr. Evans's employers; (2) the expenses were incurred for commuting—that is, for personal rather than business reasons; and (3) Plaintiffs' records do not meet the strict substantiation requirements of IRC section 274(d).

A.      *Reimbursement*

Employees may not claim tax deductions for expenses that were reimbursable by their employers. *Kirwan v. Dept. of Rev.*, 21 OTR 424, 432–33 (2014); *Symonds v. Dept. of Rev.*, 11 OTR 417, 418 (1990). The deduction under IRC section 162(a) is allowed only to "ordinary and necessary expenses," and where employer reimbursement is available it is not "necessary" for an employee to ultimately bear the expense. *Id.*; *Podems v. Comm'r*, 24 TC 21, 22–23 (1955).

Where an employee's alleged inability to receive reimbursement is challenged, the employee must provide persuasive evidence that the expenses in question could not have been reimbursed. *See Almodovar v. Dept. of Rev.*, TC–MD 180243N, WL 1781492 at *3 (Or Tax M Div Apr 22, 2019) (finding letter of taxpayer's personal accountant insufficient proof that reimbursement was unavailable from taxpayer's employer). Such evidence may take the form of a written reimbursement policy or a letter from an employer. *See id.* Testimony may also be considered as evidence where there is no written policy. *See*, *e.g.*, *Haag v. Comm'r*, TC Summ Op 2016–29, WL 3526138 at *5 (June 22, 2016) (finding from taxpayers' testimony that union electricians at company "generally were not eligible to be reimbursed for routine work-related expenses such as transportation, work clothing, and tools").

/ / /

In the present case, Mr. Evans credibly testified that reimbursement was not available for costs associated with getting to the initial job site each morning. That testimony was supported by the union contracts provided. Local 46's contract required mileage reimbursement for travel from "shop to job, job to job, and job to shop"—but not from home to job. That contract required employers to provide a subsistence reimbursement to employees on jobs requiring them "to remain away from home overnight," but with an exception applying to employees who signed the out-of-work list in the same zone as the job site.[4] Local 48's contract limited both travel and mileage reimbursement to "shop to job, job to job, and job to shop[,]" and also contained a disclaimer: "It is agreed and understood that while traveling to and from work, the employees are not within the course and scope of their employment and the relationship of employer-employee does not commence until the hourly wage commences." (Ex 1 at 18.) While Local 191's contract was not provided, in light of the other contracts the court is satisfied with Mr. Evans's testimony that travel reimbursements were not available to employees hired from the union hall within the zone of the job site.

B.      *Business or Personal Purpose*

In alleging that Mr. Evans's expenses were incurred for commuting, Defendant is arguing that he did not incur them "in carrying on any trade or business." IRC § 162(a). The U.S. Supreme Court has long held that the personal character of expenses for commuting to work, as well as related food and lodging, is not changed by a decision to live far from one's workplace. *Commissioner v. Flowers*, 326 US 465, 473, 66 S Ct 250, 90 L Ed 203 (1946); *see also Fausner v. Comm'r*, 413 US 838, 839, 93 S Ct 2820, 37 L Ed 2d 996 (1973) ("all taxpayers shall

_____

[4] A provision like this could explain why Mr. Evans was required to sign the book in Wenatchee to be referred for work in Quincy.

bear the expense of commuting to and from work without receiving a deduction for that expense").

IRC section 162(a)(2) specifically allows deductions for business travel "away from home," meaning on a trip requiring sleep or rest. *United States v. Correll*, 389 US 299, 306–07,88 S Ct 445, 19 L Ed 2d 537 (1967) (upholding IRS rule so defining "away from home"). Business travel not requiring sleep or rest may nevertheless be deductible under IRC section 162(a) as a general business expense.

In this case, Mr. Evans's mileage log reflects both kinds of travel. Most of the mileage was incurred on weeklong trips between Plaintiffs' home and the job site. However, the log also reflects several single-day trips. Each type of expense requires separate treatment.

1.     *Travel away from home*

Deductible travel "away from home" is distinguished from nondeductible long-distance commuting by identifying the taxpayer's "tax home"; *i.e.*, the taxpayer's home understood in a tax-specific sense. *See Ellwein v. United States*, 778 F2d 506, 510 n 3 (8th Cir 1985) (noting analyses of whether taxpayers are "away from home" or traveling "in pursuit of business" are "inextricably intertwined" and use the same test). The deduction under IRC section 162(a)(2) is available only for travel to a destination away from one's tax home.

Generally, a taxpayer's tax home is the vicinity of the taxpayer's principal place of business or employment. Rev Rul 56-49, 1956-1 CB 152 (IRS RRU 1956).

> "That general rule, however, is subject to an exception: the taxpayer's personal residence is the individual's tax home if the principal place of business is 'temporary' as opposed to 'indefinite' or 'indeterminate.' *Peurifoy v. Commissioner*, 358 U.S. 59, 60, 79 S Ct 104, 3 L Ed 2d 30 (1958). That exception is in turn subject to an exception found in the flush language of section 162(a), which provides that any employment period in excess of one year is *per se* indefinite."

*Morey v. Dept. of Rev.*, 18 OTR 76, 81 (2004). Given the flush language of IRC section 162(a), a taxpayer cannot bear the burden of proving a given place of business was temporary without providing evidence that employment there lasted one year or less. *See*, *e.g.*, *Fischer v. Dept. of Rev.*, TC–MD 160121C, WL 1383900 (Or Tax M Div April 18, 2017) (finding taxpayer had not carried burden where no evidence showed when work at site began).

Of particular relevance in cases involving construction workers traveling for a series of short-term jobs is Revenue Ruling 60–189, 1960-1 CB 60 (IRS RRU 1960). In that ruling, the IRS holds that the cities where those construction workers both live and are members of union locals can be their tax homes even if they do not regularly work in those cities. The important considerations identified are "whether a claimed place of abode is the taxpayer's regular place of abode in a real and substantial sense and whether the facts as a whole tend to show that the undertaking of jobs away from the point where business contacts are normally maintained is primarily for business rather than for personal reasons." The ruling continues with an example:

> "[I]n the absence of clear evidence to the contrary, it is normally to be presumed from common experience that a man with a wife and children would prefer to work regularly in or near the locality where his family resides so that he may be with them during off-duty hours. That a worker has a family with a fixed residence should therefore tend to show that he takes jobs at distant points for business rather than for personal reasons. Should his case present the additional fact that there is a shortage of work in the locality where the family resides, or a shortage of sufficient work there to provide year-round employment, there would be even stronger reasons to conclude that the jobs are taken elsewhere for business rather than for personal reasons. In the absence of persuasive evidence to show otherwise, it would be reasonable to conclude on such facts that the taxpayer is not an itinerant worker but has a 'home' for traveling expense purposes in the locality where he normally lives with his family and makes his employment contacts, and also that his employments elsewhere are 'in pursuit of business' under the third condition of the *Flowers* rule."

The ruling concludes that a construction worker's "business headquarters" is at the city "in or near which he maintains his regular abode and makes his employment contacts" through a local

union hall—even if that worker rarely works in his home city. Travel expenses for relatively short jobs away from that city would therefore be deductible.

The facts of the present case resemble the example in Revenue Ruling 60-189. Mr. Evans's home local is in the city where Plaintiffs maintain their family home. The evidence shows that Mr. Evans accepts work closer to home when it is available, but that a shortage of work locally led him to seek short-term work elsewhere. Mr. Evans testified that he had worked in the jurisdiction of Local 48 during the entirety of 2014 before beginning work for Cupertino Electric at the Quincy job site in early January 2015. That testimony was supported by Plaintiffs' 2014 tax return, in which the only union dues claimed as a deduction were those for Local 48, and by a December 2014 paystub showing year-to-date earnings from an employer other than Cupertino equivalent to over 2,000 hours' pay at Mr. Evans's rate.[5] In addition, Mr. Evans's mileage log was consistent with beginning a new job, showing a visit to Local 191's satellite office in Wenatchee on the day that work began. (Ex 3 at 1.)

Defendant argued that Mr. Evans's normal work location during 2014 was unknown because Plaintiffs had not provided a written work history for 2014. Such a record would have been helpful in establishing both whether the Quincy job was away from Mr. Evans's tax home and, for purposes of daily transportation expenses, whether he lived and normally worked in the same metropolitan area. Mr. Evans did not appear to be concealing his work history; it appears he did not know the prior years would be relevant, and no evidence shows that he was ever

/ / /

/ / /

_____

[5] The fact that Mr. Evans's 2014 employer was headquartered in Seattle does not imply that its job site was in the Seattle area; for example, Cupertino Electric was headquartered in California but in 2015 had a job site in Washington.

directly asked to produce it.[6]  Nevertheless, Plaintiffs' failure to produce such a record tells against their case.

Even without the prior years' work histories, the evidence shows that Mr. Evans's tax home during 2015 was either in Portland, where he maintained his family abode and union membership, or, if his 2014 job had continued over a year, possibly at the site of that job.[7] Because Mr. Evans was hired out Local 48 for the 2014 job, and because Local 48's jurisdiction does not extend to the areas of Quincy, Everett, or Seattle, the balance of the evidence shows that none of those three cities was Mr. Evans's tax home.  Mr. Evans's overnight travel for jobs as an electrician in Quincy, Everett, and Seattle was travel away from home in pursuit of his trade.  *See* IRC § 162(a)(2).

2.    *Daily transportation*

Although the expense of daily transportation between one's residence and one's workplace is generally nondeductible commuting, the IRS has identified three exceptions to that rule whereby a deduction is allowed.  Treas Reg § 1.262–1(5); Rev Rul 99–7, 1991– C.B.  The only relevant exception here is the first, sometimes known as the "temporary distant workplace exception":

> "(1) A taxpayer may deduct daily transportation expenses incurred in going between the taxpayer's residence and a *temporary* work location *outside* the metropolitan area where the taxpayer lives and normally works.  However, unless paragraph (2) or (3) below applies, daily transportation expenses incurred in going between the taxpayer's residence and a *temporary* work location *within* that metropolitan area are nondeductible commuting expenses."

---

[6] Defendant's Answer stated a request for Plaintiffs' 2014 work history, but an Answer is directed to the court rather than to the opposing party.  Because the Answer was filed after the case management conference, the matter was not discussed then.

[7] It is unnecessary to consider whether the latter hypothetical tax home would have changed upon termination of Mr. Evans's 2014 job.

Rev Rul 99–7 (original emphasis).

To qualify for the above exception a taxpayer must both live and "normally" work in the same metropolitan area. *Austin v. Dept. of Rev.*, 20 OTR 20, 23 (2009). To determine where a taxpayer normally works, "a review of year by year statistics is needed, following which a qualitative judgment must be reached." *Id*. at 27.

In this case, there is no evidence of whether Mr. Evans normally worked in the Portland metropolitan area, where he lived. At most, the evidence indicates Mr. Evans normally worked in Local 48's jurisdiction, but that jurisdiction encompasses multiple metropolitan areas. Accordingly, Plaintiffs have not borne their burden of proving that Mr. Evans's daily travel qualified for the exception.

C.      *Substantiation*

Plaintiffs must substantiate "by adequate records" or by sufficient corroborating evidence three elements for Mr. Evans's traveling and vehicle expenses to be deductible: (A) the amount of each expense, (B) the time and place of his travel, and (C) the business purpose of each expense. *See* IRC § 274(d). A fourth element—his business relationship to anyone receiving a benefit—is not applicable because Plaintiffs did not claim a deduction for any benefits provided by Mr. Evans to someone else. *See id*.

In general, written evidence is "considerably more probative" than oral evidence alone, and its probative value is "greater the closer in time it relates to the expenditure." Treas Reg 1.274–5T(c)(1). While a contemporaneous log is not required, it is encouraged because such a log "has a high degree of credibility" when supported by sufficient documentary evidence. *Id*. A log maintained on a weekly basis is contemporaneous with respect to that week's activity. Treas Reg 1.274–5T(c)(2)(ii).

The level of detail required in a record varies according to the facts and circumstances of the case. Treas Reg 1.274–5T(c)(2)(ii)(B). "For example, in the case of a salesman calling on customers on an established sales route, a written explanation of the business purpose of such travel ordinarily will not be required." *Id.* Furthermore, a log need not repeat details of individual trips where the trips are along a regular route:

> "For example, a taxpayer who uses a truck for both business and personal purposes and whose only business use of a truck is to make deliveries to customers on an established route may satisfy the adequate record requirement by recording the total number of miles driven during the taxable year, the length of the delivery route once, and the date of each trip at or near the time of the trips. Alternatively, the taxpayer may establish the date of each trip with a receipt, record of delivery, or other documentary evidence."

Treas Reg 1.274–5T(c)(2)(ii)(C).

In the present case, Mr. Evans's mileage log presented some complexities due to his use of multiple vehicles, his travel for AHT in addition to travel for his employers, and his use of abbreviations. However, in light of his testimony to those facts and circumstances, the mileage log is reasonably intelligible.

Plaintiffs have adequately substantiated Mr. Evans's regular routes to and from his three job sites. As with the delivery truck example from the regulation, Mr. Evans's mileage log reflects the length and date of each trip. While he did not write down the destination every time, he wrote enough to establish that the semiweekly trips were a regular route between his home and his job site. The business purpose and general pattern established by the log was supported by his 2015 work history report for Local 191 and by the more detailed printout of his work days from Sequoyah.

The other trips recorded in the log were day trips for which no deduction can be allowed because Plaintiffs did not show that Mr. Evans lived and normally worked in the same

metropolitan area. In addition, a business purpose relating to Mr. Evans's work as an electrician was not substantiated for the large majority of those day trips. Many of those trips were annotated with the letters "AHT"; although Mr. Evans testified that he had visited union halls seeking work on some of those trips, he also testified that AHT trips were for his rental business—for instance, to view properties. Other day trips, made while traveling away from home, were either for personal reasons—such as midweek trips from Quincy to Ephrata to deposit paychecks—or were unexplained.

In total, Plaintiffs have substantiated expenses for 18,357 miles of vehicle use. At the 2015 standard mileage rate of $0.575 per mile, that amounts to a $10,555.28 expense. Plaintiffs did not provide any additional documentation of the amount of Mr. Evans's expenses for meals and lodging.

Even without documentation, the amounts of some travel expenses may be deemed substantiated if they are equal to or less than the federal *per diem* rate. Rev Proc 2011–47, 3022–42 IRB 520. The travel expenses that may be so substantiated differ depending on whether the taxpayer is an employer or an employee. Employers may use a *per diem* rate to substantiate expenses reimbursed to employees for both meals and lodging. *See id.*, §§ 1, 4.01–02. However, employees and the self-employed may only use a *per diem* rate to substantiate expenses for meals. *See id.*, §§ 1, 4.03. As with all meal expenses, only 50 percent of the substantiated expense is deductible. *See* IRC § 274(n)(1).

Mr. Evans substantiated the time, place, and business purpose of 194 days of travel, including 76 days of travel to Quincy, 56 days of travel to Everett, and 62 days of travel to Redmond. The 2015 federal meals *per diem* rates for those locales were $46, $61, and $71, respectively. Plaintiffs have therefore adequately substantiated $11,314 of meals expenses for

Mr. Evans's travel, of which 50 percent may be claimed as a deduction. Because Mr. Evans traveled as an employee, however, his lodging expenses may not be substantiated using a *per diem*. *See* Rev Proc 2011–47, §§ 1, 4.03. Because no documentation of those expenses was provided, no deduction is allowed.

## III. CONCLUSION

Plaintiffs have borne their burden of proof with respect to a portion of their claimed vehicle and meals expenses, but not with respect to their lodging expenses. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs are allowed to claim 2015 unreimbursed employee business expense deductions based on $10,555.28 in vehicle expenses and $11,314 in meals expenses.

Dated this ___ day of August, 2019.

_____
POUL F. LUNDGREN
MAGISTRATE

*If you want to appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within 60 days after the date of this Decision or this Decision cannot be changed. TCR-MD 19 B.*

*This document was signed by Magistrate Poul F. Lundgren and entered on August 14, 2019.*